CV 11 5284 (PR)

Milan Pakes
J-30733
Pleasant Valley State Prison
P.O. Box 8504
Coalinga, CA. 93210

In Pro Per



---

**MILAN PAKES**

Petitioner,

v.

**ROBERT H. TRIMBLE**

RESPONDENT.

---

Dear Clerk of the United States District Court for the Northern District of California. Due to my oversight, I neglected to include this exhibit portion of my petition for writ of habeas corpus with the original application that I previously sent to this court. Included in this piece of mail you will find the completed portion of this federal application. I apoligize for any inconvienence in this matter.

Respectfully submitted,

Milan Pakes   Oct 28, 2011

MILAN PAKES
Petitioner in pro per

# Exhibit A

## TABLE OF CONTENTS

STATEMENT OF APPEALABILITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

STIPULATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

THE DEFENSE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

I.      THE PENAL CODE SECTION 273a CONVICTION MUST
        BE REVERSED PURSUANT TO THE DUE PROCESS
        CLAUSE OF THE FIFTH AND FOURTEENTH
        AMENDMENTS SINCE THE PEOPLE FAILED TO
        PRESENT SUBSTANTIAL EVIDENCE THAT MS.
        FUGATE WAS IN APPELLANT'S "CARE OR CUSTODY."
        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

II.     THE TRIAL COURT COMMITTED REVERSIBLE ERROR
        UNDER THE DUE PROCESS CLAUSE OF THE FIFTH
        AND FOURTEENTH AMENDMENTS WHEN IT FAILED
        TO INSTRUCT THE JURY *SUA SPONTE* ON THE
        MEANING OF THE TERM "CARE OR CUSTODY." . . . . . . . . 21

III.    THE TRIAL COURT COMMITTED REVERSIBLE ERROR
        UNDER THE DUE PROCESS CLAUSE OF THE FIFTH
        AND FOURTEENTH AMENDMENTS WHEN IT GAVE AN
        ERRONEOUS DEFINITION OF THE "LIKELY TO
        PRODUCE GREAT BODILY HARM OR DEATH"
        ELEMENT OF PENAL CODE SECTION 273a. . . . . . . . . . . . . 25

IV.     FOR A MYRIAD OF REASONS, THE VEHICLE CODE
        SECTION 2800.2 CONVICTION MUST BE REVERSED. . . . . 31

## TABLE OF CONTENTS (CONTINUED)

A.  The Trial Court Committed Reversible Error Under The Due Process Clause Of The Fifth and Fourteenth Amendments When It Instructed The Jury That Appellant Could Be Convicted On The Theory That He Drove With Willful And Wanton Disregard For Public Safety Or Property. . . . . : . . . . . . . . . 34

B.  The Trial Court Erred Under The Due Process Clause Of The Fifth And Fourteenth Amendments By Allowing The Jury To Consider A Violation Of Vehicle Code Section 21657 As One Of The Qualifying Vehicle Code Violations.
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

C.  The Trial Court Erred Under The Due Process Clause Of The Fifth And Fourteenth Amendments By Allowing The Jury To Consider A Violation Of Vehicle Code Section 21650 As One Of The Qualifying Vehicle Code Violations.
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

D.  Appellant Was Deprived of the Effective Assistance of Counsel under the Sixth and Fourteenth Amendments to the Federal Constitution When His Trial Attorney Failed to Object to Instruction on the Vehicle Code Section 22107 Violation on the Grounds That the Violation Was Not Proven at the Preliminary Hearing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

E.  The Trial Court Erred Under The Due Process Clause Of The Fifth And Fourteenth Amendments By Instructing The Jury That Appellant Bore The Burden Of Proving That His Act Of Driving 35 MPH Was Not Violative Of The Basic Speed Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

## TABLE OF CONTENTS (CONTINUED)

F.    If This Court Should Conclude That Two, Three or Four Of The Alleged Vehicle Code Violations Were Improperly Considered By The Jury, Reversal Is Compelled. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

G.    If This Court Should Hold That There Was Prejudicial Error With Respect To The People's Theory Regarding Multiple Vehicle Code Violations, The Conviction Cannot Be Upheld On The Ground That The People's Alternative Theory Was Valid. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

V.   THE SENTENCE FOR THE VEHICLE CODE SECTION 2800.2 CONVICTION MUST BE STAYED PURSUANT TO PENAL CODE SECTION 654. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65

.

# Exhibit B

## TABLE OF CONTENTS

STATEMENT OF APPEALABILITY ............................. 1

STATEMENT OF THE CASE ................................... 1

STATEMENT OF FACTS ..................................... 5

STIPULATIONS ........................................... 10

THE DEFENSE CASE ...................................... 11

I.    THE ABSTRACT OF JUDGMENT SHOULD BE MODIFIED
      TO REFLECT THE PENAL CODE SECTION 654 STAY
      IMPOSED ON COUNT FOUR AND TO DELETE THE
      NONEXISTENT ORDER THAT THE DEPARTMENT OF
      CORRECTIONS IS TO ADJUST APPELLANT'S PENAL
      CODE SECTION 4019 CREDITS ........................ 12

CONCLUSION ............................................ 13

Exhibit C

## TABLE OF CONTENTS

ISSUES PRESENTED FOR REVIEW ........................... 1

REASONS FOR GRANTING REVIEW ......................... 2

STATEMENT OF THE CASE ................................. 4

STATEMENT OF FACTS ................................... 7

STIPULATIONS .......................................... 12

THE DEFENSE CASE ...................................... 12

I.    REVIEW SHOULD BE GRANTED FOR THE PURPOSE OF
      DETERMINING THE PROPER CONSTRUCTION OF THE
      "PURSUING PEACE OFFICER" ELEMENT OF VEHICLE
      CODE SECTION 2800.2 ............................... 13

II.   THIS COURT SHOULD GRANT REVIEW IN ORDER TO
      HOLD THAT A TRIAL COURT HAS NO JURISDICTION
      TO IMPOSE A PRISON PRIOR AT A RESENTENCING
      HEARING WHEN THE PUNISHMENT FOR THE PRIOR
      WAS DISMISSED PURSUANT TO PENAL CODE
      SECTION 1385 AT THE ORIGINAL SENTENCING
      HEARING .......................................... 20

III.  REVIEW SHOULD BE GRANTED FOR THE PURPOSE OF
      DETERMINING THE PROPER CONSTRUCTION OF THE
      "CARE OR CUSTODY" ELEMENT OF PENAL CODE
      SECTION 273a ..................................... 21

IV.   REVIEW SHOULD BE GRANTED FOR THE PURPOSE OF
      DETERMINING THE PROPER CONSTRUCTION OF THE
      "LIKELY TO PRODUCE GREAT BODILY HARM OR
      DEATH" ELEMENT OF PENAL CODE SECTION 273a ..... 26

V.    THIS COURT SHOULD GRANT REVIEW IN ORDER TO
      DECIDE THE ISSUE LEFT OPEN IN *PEOPLE V. MENTCH,*
      SUPRA, 45 Cal.4th 274 ............................. 30

- i -

## TABLE OF CONTENTS (CONTINUED)

VI.   THIS COURT SHOULD GRANT REVIEW IN ORDER TO
      DETERMINE IF VEHICLE CODE SECTION 21650 IS
      VIOLATED BY THE ACT OF PARKING ON A CURB ...... 32

VII.  APPELLANT WAS DEPRIVED OF THE EFFECTIVE
      ASSISTANCE OF COUNSEL UNDER THE SIXTH AND
      FOURTEENTH AMENDMENTS TO THE FEDERAL
      CONSTITUTION WHEN HIS TRIAL ATTORNEY FAILED
      TO OBJECT TO INSTRUCTION ON THE VEHICLE CODE
      SECTION 22107 VIOLATION ON THE GROUNDS THAT
      THE VIOLATION WAS NOT PROVEN AT THE
      PRELIMINARY HEARING ............................ 34

CONCLUSION ............................................ 36

# Exhibit D

## TABLE OF CONTENTS

PETITION FOR WRIT OF HABEAS CORPUS . . . . . . . . . . . . . . . . . . . . 1

VERIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

STIPULATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

THE DEFENSE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

I.      PETITIONER WAS DEPRIVED OF THE EFFECTIVE
        ASSISTANCE OF COUNSEL UNDER THE SIXTH AND
        FOURTEENTH AMENDMENTS WHEN HIS TRIAL
        ATTORNEY AGREED TO THE STIPULATION THAT
        PETITIONER REASONABLY BELIEVED THAT HE
        WOULD GO TO PRISON IF HE WAS APPREHENDED BY
        THE POLICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

        A.      The Analysis of The Superior Court Cannot Be
                Upheld . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

II.     PETITIONER WAS DEPRIVED OF DUE PROCESS UNDER
        THE FIFTH AND FOURTEENTH AMENDMENTS WHEN
        THE PROSECUTOR FAILED TO PROVIDE THE DEFENSE
        WITH A COPY OF THE SAN JOSE POLICE
        DEPARTMENT VEHICLE PURSUIT POLICY WHICH WAS
        IN EFFECT ON DECEMBER 15, 2001 . . . . . . . . . . . . . . . . . . . 36

III.    PETITIONER WAS DEPRIVED OF THE EFFECTIVE
        ASSISTANCE OF TRIAL COUNSEL UNDER THE SIXTH
        AND FOURTEENTH AMENDMENTS WHEN HIS TRIAL
        ATTORNEY FAILED TO OBTAIN A COPY OF THE SAN
        JOSE POLICE DEPARTMENT VEHICLE PURSUIT
        POLICY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

## TABLE OF CONTENTS (CONTINUED)

IV.  PETITIONER WAS DEPRIVED OF DUE PROCESS UNDER
THE FIFTH AND FOURTEENTH AMENDMENTS DUE TO
THE FALSE TESTIMONY GIVEN BY OFFICER
GONZALEZ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

V.  GIVEN THE PRESENTATION OF FALSE EVIDENCE AT
TRIAL, PETITIONER IS ENTITLED TO A REMEDY
PURSUANT TO PENAL CODE SECTION 1473 . . . . . . . . . . . 47

VI.  PETITIONER WAS DEPRIVED OF A FAIR TRIAL UNDER
THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS
DUE TO THE CUMULATIVE PREJUDICE FLOWING
FROM THE SEVERAL ERRORS WHICH OCCURRED AT
HIS TRIAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

# Exhibit E



IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

# S194379

No._____

In re the Matter of

**MILAN PAUL PAKES,**

Petitioner,

On Habeas Corpus.

(Court of Appeal No.
H036227)

(Filed in Conjunction with
appeal in H035960)

(Santa Clara County Superior
Court No. CC131032)

---

PETITIONER'S PETITION FOR REVIEW

---

SIXTH DISTRICT APPELLATE PROGRAM

DALLAS SACHER
Assistant Director
State Bar #100175
100 N. Winchester Blvd., Suite 310
Santa Clara, CA 95050
(408) 241 -6171
DALLAS@SDAP.ORG

Attorneys for Petitioner,
Milan Paul Pakes

SUPREME COURT
**FILED**

JUN 2 8 2011

Frederick K. Ohlrich Clerk

Deputy





JUN 3 0 2011

## IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

|  |  |
|---|---|
| In re the Matter of | No. _____ |
| | (Court of Appeal No. H036227) |
| **MILAN PAUL PAKES,** | |
| Petitioner, | (Filed in Conjunction with appeal in H035960) |
| On Habeas Corpus. | (Santa Clara County Superior Court No. CC131032) |

### ISSUES PRESENTED FOR REVIEW

I.   Was petitioner deprived of the effective assistance of counsel
     under the Sixth and Fourteenth Amendments when his trial
     attorney agreed to the stipulation that petitioner reasonably
     believed that he would go to prison if he was apprehended by
     the police?

II.  Was petitioner deprived of due process under the Fifth and
     Fourteenth Amendments when the prosecutor failed to provide
     the defense with a copy of the San Jose police department
     vehicle pursuit policy that was in effect on December 15, 2001?

III. Was petitioner deprived of the effective assistance of counsel
     under the Sixth and Fourteenth Amendments when his trial
     attorney failed to obtain a copy of the San Jose police
     department vehicle pursuit policy?

IV.  Was petitioner deprived of due process under the Fifth and
     Fourteenth Amendments due to the false testimony given by
     Officer Gonzalez?

- 1 -

V.      Is petitioner entitled to a new trial pursuant to Penal Code
        Section 1473 due to the false testimony given by Officer
        Gonzalez?

VI.     Was petitioner deprived of a fair trial under the Fifth, Sixth and
        Fourteenth Amendments due to the cumulative prejudice
        flowing from the several errors that occurred at his trial?

## Reasons for Granting Review

Petitioner makes no claim that his case satisfies the criteria for a grant

of review. However, it is equally true that a grave miscarriage of justice has

been suffered by petitioner. As a result, this court should direct the Court of

Appeal to issue an order to show cause.

Petitioner was charged with evading the police and endangering a

minor due to his conduct in fleeing from the police with a 12 year old girl in

his vehicle. While petitioner concedes that he drove in an unlawful fashion,

under no stretch of the imagination can it be said that petitioner's behavior

merits the life sentence that he received.

The reality underlying this case is that the People sought a life sentence

on the theory that petitioner was a convicted child molester. Of course,

petitioner's status had nothing to do with an objective assessment of the

manner in which he drove. The original sentencing judge admitted as much:

"[T]his might have well been resolved at a misdemeanor level of some sort of

chase or traffic offense" absent petitioner's prior convictions. (2 RT 270 in

- 2 -

H026104.)¹/

The trial proceedings in this case besmirch our judicial system. Instead of being allowed to objectively assess whether petitioner's illegal driving rose to the level of a felony, the jury's analysis was colored by the unnecessary and highly prejudicial information that petitioner "reasonably" believed that he would go to prison if he was apprehended. To make matters worse, petitioner was further handicapped by the false testimony of a police officer and the concealment of the San Jose Police Department's written vehicle pursuit policy.

Petitioner did not have a fair trial. This court should intercede to ensure that due process is afforded before a man's freedom may be forever seized.

## STATEMENT OF THE CASE

On July 18, 2002, petitioner was charged in an information filed in the Superior Court for Santa Clara County. (CT 80-84 in H026104.) Petitioner was charged with endangering a child (Penal Code section 273a), evading the police (Vehicle Code section 2800.2) and misdemeanor hit and run (Vehicle Code section 20002). (CT 81-82 in H026104.) It was also alleged that

---

¹In petitioner's related direct appeal in H035960, the Court of Appeal took judicial notice of its records in H026104 and H032734. (Court of Appeal order of December 30, 2010.) By way of its November 15, 2010 order in this case, the court indicated that the petition would be "considered with petitioner's appeal in case number H035960 . . . ."

petitioner had two prior serious felony convictions within the meaning of Penal Code section 1170.12 and a prison prior within the meaning of Penal Code section 667.5, subdivision (b). (CT 82-83 in H026104.)

On October 8, 2002, petitioner entered a plea bargain whereby he pled guilty to count 2 (endangering a child) and admitted the prior conviction allegations. (CT 109 in H026104.) No sentencing promises were made. (CT 109 in H026104.)

On April 18, 2003, petitioner was sentenced to 26 years to life in prison. (CT 152 in H026104.) Petitioner received 25 years to life for his endangering a minor conviction and one year for his prison prior. (CT 152 in H026104.)

Petitioner pursued his appellate remedies. The judgment was reversed by the federal district court on the grounds of ineffective assistance of trial counsel in advising petitioner to plead guilty. (CT 2-16 in H032734.)

On November 5, 2007, a jury trial commenced. (CT 205 in H032734.) On November 14, 2007, the jury returned guilty verdicts on all counts. (CT 268 in H032734.) Petitioner admitted the prior conviction allegations. (CT 268 in H032734.)

On February 13, 2008, petitioner filed a motion pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 to dismiss his prior serious

- 4 -

felony convictions. (CT 278-300 in H032734.) On February 29, 2008, the court granted the *Romero* motion in part. (CT 341-342 in H032734.) The motion was denied as to the child endangerment conviction but one prior conviction was dismissed as to the evading the police conviction. (CT 341-342 in H032734.)

On February 29, 2008, petitioner was sentenced to 29 years to life in prison. (CT 343-345 in H032734.) Petitioner received 25 years to life for the child endangerment conviction and a consecutive 4 year term for the evading the police conviction. (CT 343-345 in H032734.) A concurrent six month sentence was imposed for the misdemeanor hit and run. (CT 345 in H032734.) The court struck the punishment for the Penal Code section 667.5, subdivision (b) enhancement pursuant to Penal Code section 1385. (CT 342 in H032734.)

Petitioner took an appeal and filed a habeas petition in conjunction with his appeal. On October 16, 2009, the Court of Appeal affirmed the judgment with the exception that it was held that Penal Code section 654 precluded punishment for the Penal Code section 2800.2 conviction. (Opinion in H032734, pp. 27-29.) The case was remanded for resentencing. (Opinion in H032734, pp. 28-29.) With regard to the habeas petition, the court issued an order to show cause returnable in the Superior Court. (Order

- 5 -

of October 16, 2009 in H033604.)

On January 8, 2010, the People filed their return to the habeas petition.
(Exhibit F.)[2]/ On February 5, 2010, petitioner filed his denial. (Exhibit G.)
On March 8, 2010, the court filed its order denying the petition. (Exhibit H.)

On August 9, 2010, petitioner was sentenced to 25 years to life in
prison. (CT 154-155.)[3]/ Petitioner received 25 years to life for the child
endangerment conviction. (CT 154.) The punishment for the evading the
police and hit and run convictions was stayed pursuant to Penal Code section
654. (CT 154, 2 RT 24-25.) The court struck the punishment for the Penal
Code section 667.5, subdivision (b) enhancement pursuant to Penal Code
section 1385. (CT 154, 2 RT 25-26.)

On May 25, 2011, the Court of Appeal affirmed the judgment on
appeal in H035960 and ordered minor modifications to the abstract of
judgment. On the same date, the habeas petition was summarily denied.
(Exhibit A to this petition.)

---

[2]The references to exhibits are to the exhibits filed in the Court of
Appeal in the instant habeas proceeding.

[3]"CT" and "RT" refer to the transcripts in H035960.

## STATEMENT OF FACTS

In the summer of 2001, 12 year old Adrienne Fugate was residing in a mobile home park with her family. (4 RT 226-227.)[4]/ Ms. Fugate met petitioner one day while they were both throwing away garbage at the mobile home park. (4 RT 226.) Subsequently, petitioner became a family friend. (4 RT 227.)

On the evening of December 14, 2001, petitioner slept on the living room couch at the Fugate home. (4 RT 230.) Upon awakening, petitioner asked Ms. Fugate if she wanted to accompany him on a chimney sweeping job. (4 RT 230.) Ms. Fugate's parents gave her permission to go. (4 RT 231-232.)

Petitioner and Ms. Fugate drove to the job in petitioner's pickup. (4 RT 232.) After the chimney sweeping job was completed, petitioner drove fast as they began the return trip on Highway 87. (4 RT 233, 264.) Ms. Fugate was not wearing a seatbelt. (4 RT 233.)

As petitioner neared the Curtner Avenue exit, traffic became bumper to bumper. (4 RT 235, 264.) Petitioner was driving in the left lane. (4 RT 264.) Petitioner rear-ended a Toyota SUV which was being driven by off-

---

[4]The record citations for the remainder of the brief are to the transcripts in H032734.

- 7 -

duty San Jose police officer David Gonzalez. (4 RT 233, 264.) Officer Gonzalez's vehicle suffered two "dings" to the rear gate. (4 RT 268.)

Officer Gonzalez pulled to the left shoulder of the road with the expectation that petitioner would also pull over to exchange information. (4 RT 264-265.) Instead of stopping, petitioner drove forward in the left lane and then moved onto the left shoulder. (4 RT 266.)

Petitioner drove on the shoulder at 40 to 50 mph. (4 RT 267.) Officer Gonzalez followed on the shoulder at 35 mph. (4 RT 279.) Officer Gonzalez used his cell phone to advise the police dispatcher of the chase. (4 RT 276.)

At the Alma exit, petitioner got back on the road. (4 RT 267.) By Officer Gonzalez's account, petitioner cut off approximately five cars as he repeatedly changed lanes. (4 RT 267-268.) Petitioner was driving at 40 to 50 mph. (4 RT 267.) Officer Gonzalez indicated that petitioner came within ten feet of cars which had to "slam on their brakes." (4 RT 267.) As he observed this conduct, Officer Gonzalez was fifty yards to a quarter-mile behind petitioner. (4 RT 281.)

Petitioner exited Highway 87 and got onto southbound Highway 280. (4 RT 268.) According to Officer Gonzalez, petitioner drove "erratically" and cut off two or three cars. (4 RT 269.) As petitioner swerved, Officer Gonzalez saw Ms. Fugate sliding back and forth against petitioner and the

- 8 -

door. (4 RT 269.)

Petitioner exited 280 at Seventh Street. (4 RT 269.) Officer Gonzalez was about twenty seconds or less than a quarter-mile behind petitioner. (4 RT 270, 282.) Officer Gonzalez exited at Seventh Street and saw petitioner's vehicle ahead of him. (4 RT 282.)

Petitioner made a right turn and headed westbound on Keyes Street. (4 RT 283.) After he turned onto Keyes, Officer Gonzalez saw a marked police car at Second or Third and Keyes. (4 RT 283.) The police car was stationary. (4 RT 284.) Officer Gonzalez pulled over. (4 RT 284.) He did not see petitioner drive the wrong way on a one way street nor did he do so himself. (4 RT 285.)

San Jose Police Sergeant Robert St. Amour was driving a marked police car on the day in question. (4 RT 289, 292.) After hearing a police dispatch about the accident on Highway 87, Sergeant St. Amour was on the lookout for petitioner's pickup. (4 RT 290.)

As he was driving north on First Street, Sergeant St. Amour looked to his right and saw petitioner's pickup driving west on Humboldt Street. (4 RT 290-291.) Humboldt is one way in the other direction. (4 RT 292-294.) Petitioner then turned north on Second Street which is one way southbound. (4 RT 294.)

- 9 -

Second Street has three lanes. (4 RT 319.) Sergeant St. Amour did not see any other cars in the righthand lane in which petitioner was driving. (4 RT 319.) However, three or four cars passed petitioner in other lanes. (4 RT 295.) For her part, Ms. Fugate testified that a car had to swerve out of petitioner's way. (4 RT 238.)

Sergeant St. Amour drove up First Street and made a right on Keyes. (4 RT 296-297.) As he turned on Keyes, Sergeant St. Amour activated his red light and siren. (4 RT 297.) Sergeant St. Amour positioned his vehicle at the intersection of Second and Keyes. (4 RT 296.) As he looked down Second Street, petitioner was still 75 to 100 feet south of the intersection. (4 RT 297.)

Petitioner made a right turn onto Keyes. (4 RT 298.) He was able to do so since there was "just enough room" between the front end of Sergeant St. Amour's vehicle and the curb. (4 RT 298.) As petitioner drove on Keyes, Sergeant St. Amour was delayed in his pursuit since his glasses fell off. (4 RT 298.) Sergeant St. Amour drove at "a very slow speed" while he put his glasses on. (4 RT 322.)

Petitioner took a left onto Third Street. (4 RT 298.) Although the speed limit was 30 mph, petitioner traveled at 35 mph. (4 RT 300, 326.)

Petitioner turned left onto Virginia and then took a left on Second Street. (4 RT 301-302.) Petitioner traveled at 35 mph on Second Street. (4

- 10 -

RT 303.)

Petitioner lawfully drove in the left lane on one way Second Street. (4 RT 304.) Before reaching Martha Street, petitioner drove up onto the curb. (4 RT 303-305.) Both of the front tires were on the curb and the vehicle was sticking out into the road. (4 RT 306.)

Petitioner ran to the porch at 868 Second Street. (4 RT 307.) Petitioner was apprehended by Sergeant St. Amour. (4 RT 307-308.)

By Sergeant St. Amour's account, his pursuit of petitioner took 55 seconds and covered one-half mile. (4 RT 328.) Sergeant St. Amour measured the starting point of the pursuit as Third and Keyes. (4 RT 328-329.)

## STIPULATIONS

The parties agreed to two stipulations which were read to the jury. The stipulations were as follows.

First, "the first on-duty police officer in a marked police car to encounter the defendant after the defendant's collision with off-duty Officer Gonzales's [sic] vehicle was Sergeant St. Amour. There were no marked police cars behind the defendant's truck as he drove the wrong way on Second Street." (4 RT 332.)

Second, "the defendant admits that he intended to flee following the

- 11 -

traffic accident with another vehicle because he reasonably believed that if he was apprehended by the police, he would be sent to state prison." (4 RT 332.)

### THE DEFENSE CASE

Petitioner's father, Milan Pakes, resided at 868 Second Street. (4 RT 340.) After petitioner was arrested, Mr. Pakes parked the pickup. (4 RT 334-335.) Soon thereafter, Mr. Pakes sat in the passenger seat as his son Shawn drove the pickup. (4 RT 335.) Mr. Pakes used his seatbelt which was functional. (4 RT 335.)

During his closing argument, defense counsel urged the jury to convict petitioner of the lesser included offenses of misdemeanor child endangerment and misdemeanor evading the police. (5 RT 398-414.) Counsel conceded that petitioner was guilty of the charged offense of misdemeanor hit and run. (5 RT 416.)

### Facts Adduced on Habeas Corpus

Petitioner's counsel, Allen Schwartz, entered a stipulation that petitioner "admits that he intended to flee following the traffic accident because he reasonably believed that if he was apprehended by the police, he would be sent to state prison." (4 RT 332.) Mr. Schwartz has indicated that he lacked a "valid reason" for entering the stipulation. (Exhibit A, p. 1.)

On December 15, 2011, the San Jose Police Department had a written

- 12 -

policy regarding vehicle pursuits. (Exhibit B.) In material part, Procedure L2102 provided that officers were to engage in pursuits of only those Vehicle Code violators who were driving in a non-hazardous manner. (Exhibit B, p. 3.)

The prosecutor did not provide a copy of the vehicle pursuit policy to Mr. Schwartz. Mr. Schwartz made no attempt to obtain a copy of the policy. Mr. Schwartz had no tactical reason for failing to procure a copy of the policy. (Exhibit A, p. 1.)

At trial, the prosecutor, James Gibbons-Shapiro, was in possession of a written transcript of the police dispatch tape regarding the chase of petitioner. (Exhibit E, p. 18.) The transcript reveals that: (1) petitioner was seen driving southbound on Third Street going the wrong direction and westbound on Humboldt Street; and (2) Officer Gonzalez followed the marked police car which pursued petitioner. (Exhibit C, p. 11.) At the time that petitioner drove on Third Street and Humboldt Street, there was no one following him other than Officer Gonzalez. Thus, Mr. Gibbons-Shapiro necessarily knew that Officer Gonzalez testified falsely when he said that he neither drove the wrong way on a one way street nor saw petitioner doing so. Similarly, Mr. Gibbons-Shapiro knew that Officer Gonzalez testified falsely when he indicated that he pulled over upon seeing a marked police car.

- 13 -

I.

PETITIONER WAS DEPRIVED OF THE EFFECTIVE
ASSISTANCE OF COUNSEL UNDER THE SIXTH AND
FOURTEENTH AMENDMENTS WHEN HIS TRIAL
ATTORNEY AGREED TO THE STIPULATION THAT
PETITIONER REASONABLY BELIEVED THAT HE
WOULD GO TO PRISON IF HE WAS APPREHENDED BY
THE POLICE.

Pursuant to defense counsel's agreement, the following stipulation was

read to the jury: "[T]he defendant admits that he intended to flee following the

traffic accident with another vehicle because he reasonably believed that if he

was apprehended by the police, he would be sent to state prison." (4 RT 332.)

During his closing argument, the prosecutor referred to the stipulation on

eight separate occasions. (5 RT 381-382, 384-385, 394-395, 422-423.)

Defense counsel has now admitted that he erred in agreeing to the stipulation.

(Exhibit A, p. 1.) Since counsel made a substantial error which prejudiced

petitioner's cause, the judgment must be reversed.

The genesis of the stipulation resided in the prosecutor's desire to

adduce evidence that petitioner had suffered prior convictions for child

molestation and was subject to a parole condition which precluded him from

being alone with minors. (1 CT 143-145.) In this regard, petitioner had

admitted to the police that he fled from the accident scene since he had a

minor in his vehicle. (1 CT 143, 147-148.) In the prosecutor's view, the

foregoing evidence was admissible to show the motive and intent underlying the charged offenses of child endangerment and evading the police. (1 CT 143-145.)

By way of a written motion in limine, defense counsel posited an Evidence Code section 352 objection on the theory that the prejudicial effect of the evidence outweighed its probative value. (1 CT 126-129.) During the hearing on the motion, defense counsel argued that the proffered evidence was entirely cumulative since there was no dispute concerning petitioner's intent to flee from the accident scene. (2 RT 118-119.) Thus, defense counsel offered to stipulate that petitioner intended to flee from the police. (2 RT 118.)

In order to resolve the controversy, the court suggested that the parties might stipulate that "the defendant intended to evade the officer because the defendant feared if detained he would be sent to prison." (2 RT 122.) The prosecutor was not amenable to the proposal and strongly argued for the admissibility of the evidence. (2 RT 122-125.)

After a recess was taken, defense counsel announced that he would accept the court's suggested stipulation. (2 RT 127-128.) Once again, the prosecutor voiced objection and argued for the admissibility of the evidence. (2 RT 128-130.) When the prosecutor concluded his argument, the court

- 15 -

indicated that it was unpersuaded by the prosecutor's position. (2 RT 130.)

Following the court's comments, the parties agreed to the proposed stipulation. (2 RT 131-133.) The jury did not learn of petitioner's prior convictions or parole status.

In agreeing to the stipulation, defense counsel deprived petitioner of a fair trial. Although the trial court believed that the content of the stipulation was "far less prejudicial" than the excluded evidence (2 RT 130), the court (and defense counsel) missed a fundamental reality: The content of the stipulation was itself so prejudicial that petitioner could not receive a fair trial.

A meritorious claim of ineffective assistance of counsel requires a two part showing: (1) counsel's performance fell below the objective standard of prevailing professional norms; and (2) the defendant was prejudiced by counsel's failing. (*Strickland v. Washington* (1984) 466 U.S. 668, 688-695.) With respect to the requisite showing of prejudice, a defendant is entitled to relief if he can show "a significant but something-less-than 50 percent likelihood of a more favorable" result absent counsel's error. (*People v. Howard* (1987) 190 Cal.App.3d 41, 48.)

It is a settled principle that one "of the principal tasks of a defense attorney is to attempt to protect his or her client from the admission of evidence that is more prejudicial than probative . . . . " (*In re Jones* (1996) 13

Cal.4th 552, 581.) Given this rule, counsel performs in a patently ineffective manner when he affirmatively acts to introduce prejudicial evidence. (*Jones*, supra, 13 Cal.4th at pp. 568-571 [ineffective assistance found where counsel adduced a hearsay statement that defendant killed the victim].)

Here, defense counsel acted in a competent manner when he initially sought exclusion of the highly prejudicial evidence that petitioner was a convicted child molester who had violated a condition of parole by being alone with Ms. Fugate. However, counsel then committed a fatal error by failing to obtain a ruling on his motion in limine.

As the record shows to a certainty, the court had tentatively decided to grant the motion. (2 RT 130.) Indeed, the court told the prosecutor that the motion was likely going to be granted if he did not enter the court's proposed stipulation. (2 RT 130.) At that point, it was defense counsel's duty to press for a ruling. Had he done so, the evidence would have been excluded and the prejudicial stipulation would not have been read to the jury.

To his credit, defense counsel has candidly admitted his mistake. (Exhibit A.) Having reviewed the record, counsel has conceded that he had "no valid reason" for entering the stipulation. (Exhibit A.)

Presumably, the People will argue that counsel made a reasonable tactical choice by agreeing to the stipulation. However, such a contention

- 17 -

fails for two reasons.

First, as has already been argued, the trial court announced a tentative ruling in petitioner's favor. There was quite simply "no valid reason" for failing to obtain a final ruling. (Exhibit A.)

Second, the content of the stipulation was so prejudicial that it did not preserve petitioner's right to a fair trial. The jury was told that petitioner intended to flee from the accident scene "because he reasonably believed that if he was apprehended by the police, he would be sent to state prison." (4 RT 332.) The natural inference to be drawn from the stipulation was that petitioner was wanted by the police due to serious criminal conduct. Since the jury was told that petitioner's fear of going to prison was reasonable (4 RT 332), the jury was left to imagine all manner of heinous criminal behavior.

Petitioner will not belabor the obvious. The stipulation caused the jury to believe that petitioner either had a criminal record or had just committed a crime which was serious enough to send him to prison. Either inference was sufficiently prejudicial to deprive petitioner of a fair trial. (*People v. Allen* (1978) 77 Cal.App.3d 924, 934-935 and cases cited therein [reversal is required when the jury improperly learns that the defendant is an ex-convict or parolee].)

The remaining question is whether there was "a significant but

- 18 -

something-less-than 50 percent likelihood of a more favorable" result if the stipulation had not been given. (*People v. Howard*, supra, 190 Cal.App.3d 41, 48.) On the instant record, prejudice must be found.

During his closing argument, the prosecutor relentlessly cited the stipulation on eight separate occasions. (RT 381-382, 384-385, 394-395, 422-423.) This conduct demonstrates that the stipulation undoubtedly had a profound effect on the jury. (*People v. Woodard* (1979) 23 Cal.3d 329, 341 [reversal ordered where prosecutor "exploited" evidentiary error during closing argument]; *People v. Cruz* (1964) 61 Cal.2d 861, 868 [prejudice found where prosecutor emphasized inadmissible evidence in his closing argument].)

The prosecutor relied so heavily on the stipulation since his showing regarding the two felony offenses was less than overwhelming. A close examination of the evidence demonstrates that the stipulation most likely tipped the balance against petitioner.

In defending against the section 273a charge, petitioner strenuously argued that the People had failed to prove the "likely to produce great bodily harm or death" element of the offense. (5 RT 398-405.) Defense counsel encouraged the jury to convict petitioner of misdemeanor child endangerment which does not require the likelihood of great bodily injury or death. (5 RT 398-405.)

- 19 -

In urging this result, petitioner had substantial ammunition. Ms. Fugate was not injured. This fact was certainly some evidence that the likelihood of great bodily injury was not "great." Moreover, petitioner's conduct was normative in two respects. While petitioner was not supposed to drive on the shoulder of the freeway, emergency vehicles frequently do. Similarly, it is a daily occurrence for some drivers to cut in and out of lanes on the freeway. Since there are rarely deadly collisions, a rational juror could find that the risk of great bodily injury was not "great."

The same holds true for petitioner's conduct on city streets. Concededly, petitioner acted illegally when he drove the wrong way on one way streets. However, the duration of such driving was quite short and Sergeant St. Amour never saw anyone swerving away from petitioner.

As for the Vehicle Code section 2800.2 charge, the People's evidence was remarkably weak. Petitioner eluded Sergeant St. Amour for 55 seconds while driving 35 mph without running any red lights or stop signs. (4 RT 300, 303, 328-329.) This evidence is scarcely evocative of felony liability.

Moreover, it cannot be overlooked that the jury posed a question about the evading charge and asked for the rereading of several portions of the testimony. (ACT 1.) These requests present an objective indication that the jury was far from certain about petitioner's guilt. (*People v. Pearch* (1991)

- 20 -

229 Cal.App:3d 1282, 1295 ["[j]uror questions and requests to have testimony reread are indications the deliberations were close. [Citations.]"].)

It is often said that a criminal defendant is entitled only to a fair trial, not a perfect one. In this case, the stipulation doomed petitioner from the start. The judgment must be reversed.

## A. The Analysis of The Superior Court Cannot Be Upheld.

The Court of Appeal issued an order to show cause returnable in the Superior Court regarding this issue. (Order of October 16, 2009 in H033604.) Without holding an evidentiary hearing, the trial court denied relief. (Exhibit H.) The trial court's analysis cannot be sustained.

The trial court offered essentially three reasons in support of its decision: (1) the trial judge never announced his intention to exclude all of the evidence regarding petitioner's prior convictions and parole status; (2) the trial judge must have intended to admit evidence of petitioner's parole status and parole condition because defense counsel's agreement to the stipulation would otherwise be "unexplainable;" and (3) the stipulation was beneficial to petitioner since it served to exclude prejudicial evidence. (Exhibit H, pp. 110-114.) Each of these points will be separately addressed below.

As has been discussed above, the trial judge indicated that he was tentatively inclined to exclude evidence of petitioner's prior convictions and

- 21 -

parole condition. The judge expressed his view as follows:

> "I guess we need a little explanation of where the court is on its legal thinking. The court is inclined to think tentatively that the evidence of motive as reflected in the police transcript as well as the police report of Officer Fisher is more prejudicial than probative under a Evidence Code section 352 balancing analysis. However, I would be inclined to permit a stipulation along the lines I outlined because the evidentiary content of that stipulation is nearly as probative and it's far less prejudicial.
>
> "So what I'm really doing is offering the People an opportunity to enter into the stipulation rather than to exclude the mode of evidence all together." (2 RT 130.)

The trial court reviewed the quoted comments and understood the trial judge to be "explicitly referring to petitioner's statements to the police." (Exhibit H, p. 110.) This is supposedly so since the parties "had not yet discussed the issue of the admissibility of the fact of the prior conviction, parole status and parole condition." (Exhibit H, p. 111.) Based on these premises, the trial court concluded that defense counsel could not have reasonably believed that the trial judge was going to exclude evidence of petitioner's prior convictions and parole condition. (Exhibit H, pp. 110-111.) The court's reading of the record is mistaken.

At the very outset of the discussion, the prosecutor expressly argued that petitioner's prior convictions and parole condition should be admitted into evidence. (2 RT 114-115.) In response, the court inquired as to how the prosecutor would "go about proving up that parole, that condition?" (2 RT

- 22 -

115.) Given this record, it is quite simply untrue that the parties and court "had not yet discussed the issue of the admissibility of the fact of the prior conviction, parole status and parole condition." (Exhibit H, p. 111.)

Aside from its failure to acknowledge the full record, the court also overlooked the specific language used by the trial judge. In stating his tentative ruling, the judge did not say that he was inclined to exclude only petitioner's statements. Rather, he indicated that he intended to exclude "the evidence of motive" and "the mode of evidence all together." (2 RT 130.) These words quite obviously include petitioner's prior convictions and parole condition.

As further support for its reading of the record, the trial court concluded that the trial judge necessarily intended to "admit the fact of petitioner's parole status and/or parole condition or petitioner's admission of his parole status and parole condition in some form" since defense counsel's agreement to the stipulation would otherwise be "utterly unexplainable." (Exhibit H, p. 112.) The court's reasoning is flawed. This is so in two respects.

First, defense counsel has admitted that he erred when he entered the stipulation. (Exhibit A.) Thus, rather than being "utterly unexplainable," counsel's conduct is explained by the simple fact that he made a mistake.

- 23 -

Second, the record is barren of any suggestion by the trial judge that he intended to admit evidence of petitioner's prior convictions and parole condition. To the contrary, the court indicated that the proffered "motive" evidence was "more prejudicial than probative under a Evidence Code section 352 balancing analysis." (2 RT 130.)

As its next point, the trial court reasoned that defense counsel's election to enter the stipulation was reasonable since counsel "succeeded in keeping petitioner's parole status from the jury." (Exhibit H, p. 113.) In reaching this conclusion, the court completely ignored the essence of petitioner's argument.

The vice in defense counsel's performance is that the content of the proposed stipulation was in and of itself so prejudicial that it served to deprive petitioner of a fair trial. The jury was told that petitioner intended to flee from the accident scene "because he reasonably believed that if he was apprehended by the police, he would be sent to state prison." (4 RT 332.) The natural inference to be drawn from the stipulation was that petitioner was wanted by the police due to serious criminal conduct. Since the jury was informed that petitioner's fear of going to prison was reasonable (4 RT 332), the jury was left to imagine all manner of horrible criminal behavior.

It must be emphasized that defense counsel's ultimate duty was to

ensure that petitioner received a fair trial.  Since the court's proposed

stipulation was entirely prejudicial to petitioner's cause, counsel had an

obligation to reject it even if the consequence was the admission of the

evidence that petitioner was on parole and was not allowed to be alone with

minors.  If that evidence had been admitted over defense objection, it is

virtually certain that any adverse judgment would have been reversed on

appeal. Indeed, the federal court had already predicted this result.

During the course of the federal proceedings, the People argued that

petitioner's original trial attorney had wisely advised him to plead guilty. In

taking this position, the People posited that petitioner's prior convictions and

parole status would have come into evidence at trial.  District Court Chief

Judge Vaughn Walker rejected this claim:

> "Additionally, this court agrees that the probative value of
> introducing petitioner's prior convictions and parole status
> would have been substantially outweighed by the danger of
> undue prejudice it may have created to the jury." (1 CT 14-15
> in H032734.)

In short, the record reveals that defense counsel was in the driver's seat.

Had he insisted on a ruling on his motion, the judge would have granted it.

(2 RT 130.) Moreover, even if the judge had changed his tentative ruling and

denied the motion, an appellate reversal would have resulted.  (1 CT 14-15.)

Interestingly, the trial court unconsciously agreed with this conclusion.

- 25 -

After acknowledging that defense counsel had originally offered to stipulate that petitioner intended to flee from the police, the court indicated that "in light of petitioner's willingness to admit intent, petitioner's statements were more prejudicial than probative." (Exhibit H, p. 113.)

Given this concession, it is difficult to understand the court's ultimate conclusion that petitioner's prior convictions and parole condition would nonetheless have been admitted by the trial judge. Insofar as the prior convictions and parole condition were no less prejudicial than petitioner's statements, the only plausible conclusion is that defense counsel erred by failing to insist on a ruling on his motion to exclude the evidence.

Finally, the trial court did not address petitioner's showing that the stipulation was prejudicial since the prosecutor cited its contents eight times during closing argument. Given the court's silence, the judgment must be reversed. (*Strickland v. Washington*, supra, 466 U.S. 668, 694.)

II.

PETITIONER WAS DEPRIVED OF DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS WHEN THE PROSECUTOR FAILED TO PROVIDE THE DEFENSE WITH A COPY OF THE SAN JOSE POLICE DEPARTMENT VEHICLE PURSUIT POLICY WHICH WAS IN EFFECT ON DECEMBER 15, 2001.

As a matter of federal due process, a prosecutor has the duty to provide the defense with material, favorable evidence which is within the

- 26 -

government's control. (*United States v. Agurs* (1976) 427 U.S. 97, 107.) The scope of the disclosure obligation extends beyond the contents of the prosecutor's own file and encompasses evidence which is held by the police. (*Kyles v. Whitley* (1995) 514 U.S. 419, 437.)

"Favorable evidence includes both evidence that is exculpatory to the defendant as well as evidence that is damaging to the prosecution, such as evidence that impeaches a government witness. [Citations.]" (*People v. Uribe* (2008) 162 Cal.App.4th 1457, 1471-1472.) If the withheld evidence raises a reasonable probability that it would have changed the result of the trial, the defendant is entitled to a remedy. (*Id.* at p. 1472.)

In this case, the prosecution failed to disclose a highly material document which would have directly harmed the credibility of Officer Gonzalez. Insofar as Officer Gonzalez was the People's primary witness, the error necessarily had a profound effect on the fairness of the trial.

The conduct in this case occurred on December 15, 2001. On that date, the San Jose Police Department had a written policy which governed vehicle pursuits. In material part, Procedure L2102 provided:

"When the violator does not stop, or attempts to avoid capture, a *pursuit* is initiated.

"When the violator does not stop, and the driving behavior is reasonably perceived as being non-hazardous, (i.e., the violator is mindful of other persons' safety, the vehicle code, and is

- 27 -

traveling at reasonable speeds for the conditions of the traffic and roadway), the officer can continue to pursue the vehicle, unless the driving behavior or circumstances change that would make it unsafe to continue.

"Personnel who are involved in a vehicle pursuit with a non-violent felon, misdemeanant, person suspected of a property crime, or vehicle code violator, should terminate the pursuit when it becomes apparent the violator exhibits the intent to evade, willfully flees or otherwise attempts to elude the pursuing officer(s) by driving without due care for the safety of others." (Exhibit B, p. 3, emphasis in original.)

On its face, Procedure L2102 applies only when the officer is operating a police car (i.e. an "authorized emergency vehicle"). (Exhibit B, p. 2.) However, Procedure L2102 was applicable to Officer Gonzalez's conduct pursuant to Procedure L2204 which provides that "off-duty officers" who undertake action are "governed by the same policies, procedures, rules and regulations that apply to on-duty personnel in a similar situation." (Exhibit B, p. 10.)

At the outset, it is manifest that the police department policy was subject to disclosure. Officer Gonzalez was the central witness for the government and the prosecutor was charged with the knowledge held by his police witness. (*People v. Uribe*, supra, 162 Cal.App.4th 1457, 1475-1476.) Since Officer Gonzalez was unquestionably aware of the written policy, it was the prosecutor's obligation to provide a copy to the defense. (*Youngblood v. West Virginia* (2006) 547 U.S. 867, 868-870 [duty of disclosure applied to

- 28 -

note seen by the police but not the prosecutor].)

The vehicle pursuit policy constitutes highly favorable defense evidence. In seeking a conviction for the child endangerment charge, the prosecutor placed his primary reliance on Officer Gonzalez's account that petitioner drove in an unsafe manner by proceeding on the shoulder of the road and by cutting in and out of lanes on the freeway. However, the vehicle pursuit policy would have served to impeach Officer Gonzalez in either of two respects.

First, the policy provides that an officer may pursue a driver if he perceives the driving "as being *non-hazardous*." (Exhibit B, p. 3, emphasis in original.) Here, Officer Gonzalez also drove on the shoulder and changed lanes as he pursued petitioner. Thus, when faced with the vehicle pursuit policy, Officer Gonzalez may have admitted that he believed that petitioner was not driving in a hazardous fashion.

Second, if Officer Gonzalez continued to assert that petitioner was driving hazardously, the policy would have demonstrated a strong bias on Officer Gonzalez's part. The policy specifically provides that an officer is not to maintain a pursuit of a "*non-violent felon*" or "*vehicle code violator*" if the person is driving unsafely. (Exhibit B, p. 3, emphasis in original.) Thus, if Officer Gonzalez believed that petitioner posed a safety hazard, Officer

- 29 -

Gonzalez was in direct violation of the policy by mimicking petitioner's driving. From this predicate, the jury could well have reasoned that Officer Gonzalez was so upset and biased against petitioner due to the preceding accident that he chose to violate the policy. Given this bias, the jury may have rejected Officer Gonzalez's testimony.

With respect to the materiality of the policy, petitioner has no burden to show that disclosure of the evidence would have resulted in his acquittal. (*Youngblood v. West Virginia*, supra, 547 U.S. 867, 870.) Rather, reversal is required upon a "'showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.' [Citation.]" (*Ibid.*) Here, the police policy was plainly material.

In determining whether petitioner's driving endangered Ms. Fugate, the jury undoubtedly looked for guidance from Officer Gonzalez's testimony. However, unbeknownst to the jury, Officer Gonzalez was a misleading witness since be either believed that petitioner was driving non-hazardously or he himself was violating police policy by pursuing petitioner. When faced with the policy, a jury would have had little "confidence" in Officer Gonzalez's credibility.

Importantly, Ms. Fugate's testimony was not an adequate substitute for

- 30 -

Officer Gonzalez's account. This is so since Ms. Fugate was clearly not an accurate reporter of the relevant events.

Ms. Fugate gave two pieces of testimony which were false. First, Ms. Fugate testified that a police car followed petitioner as he drove the wrong way on a one way street. (3 RT 255-256, 258.) The prosecutor stipulated to the contrary. (3 RT 332.) Second, Ms. Fugate testified that petitioner drove 65 mph on city streets. (RT 257, 261.) This is categorically untrue. Sergeant St. Amour indicated that petitioner drove 35 mph. (RT 300.) Given these highly erroneous aspects of Ms. Fugate's testimony, the jury would not have relied on her testimony alone in returning a conviction.

The prosecutor failed to disclose a highly material document which would have greatly harmed his case. The judgment must be reversed.

III.

PETITIONER WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS WHEN HIS TRIAL ATTORNEY FAILED TO OBTAIN A COPY OF THE SAN JOSE POLICE DEPARTMENT VEHICLE PURSUIT POLICY.

As has been discussed in the preceding argument, the prosecutor failed in his duty to provide the defense with a copy of the San Jose Police Department vehicle pursuit policy. In the event that this court should reject the foregoing argument, the reality remains that petitioner was deprived of the

- 31 -

effective assistance of counsel when his attorney failed to obtain a copy of the policy on his own.

A criminal defense attorney has the duty to investigate all possible defenses. (*People v. Pope* (1979) 23 Cal.3d 412, 425.) In this case, it was readily apparent that Officer Gonzalez would be the most important witness for the government. It was also obvious that the San Jose Police would have a formal written policy regarding vehicle pursuits. This is so since police departments are entitled to immunity against lawsuits if they maintain such a policy. (Vehicle Code section 17004.7.)

As is demonstrated by his declaration, appellate counsel was easily able to obtain a copy of the vehicle pursuit policy by contacting both the police department and the local Public Defender's Office. (Exhibit D.) There is no reason why trial counsel could not have performed the same investigation.

With regard to the question of prejudice, the test under *Strickland v. Washington*, supra, 466 U.S. 668 closely mirrors the due process test applied when the prosecutor fails in his mandatory duty to disclose favorable evidence. (*Kyles v. Whitley*, supra, 514 U.S. 419, 436.) Thus, since petitioner has already shown that the non-disclosure of the vehicle pursuit policy was prejudicial, the judgment must be reversed.

- 32 -

IV.

PETITIONER WAS DEPRIVED OF DUE PROCESS UNDER
THE FIFTH AND FOURTEENTH AMENDMENTS DUE TO
THE FALSE TESTIMONY GIVEN BY OFFICER
GONZALEZ.

As a component of due process, it has been held "that a conviction
obtained by the knowing use of perjured testimony is fundamentally unfair,
and must be set aside if there is any reasonable likelihood that the false
testimony could have affected the judgment of the jury." (*United States v.
Agurs,* supra, 427 U.S. 97, 103, fns. omitted.) Since the knowing presentation
of false testimony strikes at the very fairness of the adjudicative process, " '
"reversal is "virtually automatic""" once it is established that perjury was
committed. (*Commonwealth v. Bowie* (9th Cir. 2001) 243 F.3d 1109, 1114.)

At trial, Officer Gonzalez testified that he followed petitioner to Keyes
Street. (4 RT 283.) After he turned onto Keyes, Officer Gonzalez saw a
marked police car at Second or Third and Keyes. (4 RT 283.) Officer
Gonzalez claimed that he pulled over at that point. (RT 284.) Officer
Gonzalez denied that he saw petitioner drive the wrong way on a one way
street nor did he do so himself. (4 RT 285.)

Officer Gonzalez committed perjury when he testified that he pulled
over on Keyes Street. Officer Gonzalez also perjured himself when he denied
that he drove the wrong way on a one way street and that he did not see

- 33 -

petitioner driving in this manner. When Officer Gonzalez gave the false testimony, the prosecutor, Mr. Gibbons-Shapiro, knew that the testimony was false.

When Officer Gonzalez testified, Mr. Gibbons-Shapiro was in possession of a written transcript of the dispatches made by the San Jose police during the pursuit of petitioner. (Exhibit E, p. 18.) In relevant part, the transcript provides that petitioner was "S/B 3rd going wrong direction." (Exhibit C, p. 11.) Then, the transcript provides "W/B on Humboldt." (Exhibit C, p. 11.) Finally, after Sergeant St. Amour sighted petitioner, the transcript provides that "RP now following PD."[5]/ (Exhibit C, p. 11.) Without doubt, the transcript establishes that Officer Gonzalez testified falsely.

When petitioner turned onto Keyes Street, the only officer following him was Officer Gonzalez. As the transcript reveals, the dispatcher was told that petitioner had turned the wrong way on Third Street and had then turned onto Humboldt Street. (Exhibit C, p. 11.) The only possible source of this information was Officer Gonzalez. Thus, it is manifest that Officer Gonzalez perjured himself when he denied that he drove the wrong way on a one way street or had seen petitioner do so.

_____

[5]Petitioner believes that "RP" refers to reporting party and "PD" refers to police department.

- 34 -

In addition, the transcript establishes that Officer Gonzalez lied when he testified that he pulled over once he saw Sergeant St. Amour. Insofar as the transcript states that the "RP" followed the "PD," it is manifest that Officer Gonzalez did not pull over as he claimed.

Aside from the certainty that Officer Gonzalez committed perjury, the record also shows that Mr. Gibbons-Shapiro knowingly allowed the false testimony to be heard. Appellate counsel and Mr. Gibbons-Shapiro have exchanged a series of letters in which Mr. Gibbons-Shapiro has been given an opportunity to provide an innocent explanation for the testimony or to pursue his ethical duty to correct the record. (Exhibit E.) Mr. Gibbons-Shapiro has taken the position that any comment by him is "unwarranted." (Exhibit E, pp. 18, 21.) This is legally incorrect.

A prosecutor, like any lawyer, has the duty to correct false evidence which has been presented to the trier of fact. (*People v. Seaton* (2001) 26 Cal.4th 598, 647.) Mr. Gibbons-Shapiro has not argued that Officer Gonzalez gave truthful testimony. Thus, the only reasonable inference is that Mr. Gibbons-Shapiro knew that the testimony was false and is stonewalling petitioner's attempt to seek a remedy. (*United States v. LaPage* (9th Cir. 2000) 231 F.3d 488, 492 ["[w]here the prosecutor knows that his witness has lied, he has a constitutional duty to correct the false impression of the facts."].)

- 35 -

Moreover, even if Mr. Gibbons-Shapiro failed to appreciate that Officer Gonzalez testified falsely, relief must still be granted since Mr. Gibbons-Shapiro should certainly have known that Officer Gonzalez had lied. (*Hein v. Sullivan* (9th Cir. 2010) 601 F.3d 897, 908 [false evidence claim is made out if prosecutor should have known that testimony was false].)

The remaining question is whether "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." (*United States v. Agurs,* supra, 427 U.S. 97, 103, fn. omitted.) Without doubt, there was such a likelihood in this case.

A crucial part of the People's case was that petitioner drove dangerously since he drove the wrong way on one way streets. However, as we now know, Officer Gonzalez drove in exactly the same manner. He did so with his ex-wife in the car. (4 RT 271.) Obviously, the prosecutor could not have plausibly accused petitioner of driving dangerously while his own witness acted in the same manner with a loved one in the vehicle.

Moreover, the prosecutor's failure to correct the inaccurate testimony allowed the jury to have a completely false view of Officer Gonzalez's credibility. Had the prosecutor pursued the proper course and caused Officer Gonzalez to retract his false testimony, the jury would have learned that Officer Gonzalez was not to be believed. The People's case would have been

utterly discredited by such an admission.

*United States v. LaPage*, supra, 231 F.3d 488 is closely on point. There, the defendant was charged with submitting a false loan application. The government's key witness, Manes, was a loan broker who testified that the defendant knowingly committed fraud. Part of Manes' story was that he used an accountant, Pinkston, to falsify tax records. However, when Pinkston entered the courtroom on a prior occasion, Manes did not recognize her. Nonetheless, Manes lied at trial and claimed that he had recognized Pinkston. The Court of Appeals reversed the judgment. (*Id.* at p. 491.)

In this case, the People rested their case on Officer Gonzalez's credibility and allowed him to lie under oath. The judgment must be reversed.

V.

## GIVEN THE PRESENTATION OF FALSE EVIDENCE AT TRIAL, PETITIONER IS ENTITLED TO A REMEDY PURSUANT TO PENAL CODE SECTION 1473.

Pursuant to Penal Code section 1473, subdivision (b)(1), a defendant is entitled to habeas relief if the jury heard false evidence that was "substantially material or probative on the issue of guilt or punishment . . . ." Under section 1473, a remedy must be given even if the prosecutor was unaware of the falsity of the evidence. (Section 1473, subd. (c); *In re Roberts* (2003) 29 Cal.4th 726, 742.)

- 37 -

Petitioner will not belabor the argument which has already been advanced. Officer Gonzalez's false testimony was highly material with respect to petitioner's guilt since Officer Gonzalez engaged in the identical conduct committed by petitioner when he drove the wrong way on one way streets. If the jury had learned of Officer Gonzalez's conduct, it is likely that petitioner would have been acquitted since Officer Gonzalez was apparently of the view that his own conduct was not dangerous.

Under section 1473, the use of false testimony compels a remedy when there is a reasonable probability that the evidence affected the outcome of the trial. (*Roberts*, supra, 29 Cal.4th at p. 742.) Here, Officer Gonzalez's false testimony served to obscure the truth from the jury. The judgment must be reversed.

VI.

PETITIONER WAS DEPRIVED OF A FAIR TRIAL UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS DUE TO THE CUMULATIVE PREJUDICE FLOWING FROM THE SEVERAL ERRORS WHICH OCCURRED AT HIS TRIAL.

Assuming that this court should conclude that none of the errors identified above individually warrants reversal, the cumulation of the errors compels a finding of prejudice. (*Chambers v. Mississippi* (1973) 410 U.S. 284, 302-303.) In establishing this conclusion, it is helpful to compare the

- 38 -

trial which actually took place with the one which should have occurred.

Had the case been properly litigated, the jury would not have heard the highly prejudicial stipulation that petitioner reasonably believed that he would go to prison if caught. Obviously, this error improperly strengthened the People's case.

On the other side of the ledger, the People improperly concealed: (1) the vehicle pursuit policy; and (2) the fact that Officer Gonzalez committed perjury. By depriving the jury of knowledge of these facts, the People failed to give the defense the necessary ammunition to attack the less than overwhelming case against petitioner.

The bedrock of our justice system is that a criminal defendant must be given a fair trial. Petitioner was convicted in a proceeding which was marred by fundamental error. A remedy must be provided.

## CONCLUSION

For the reasons expressed above, this court should grant review and direct the Court of Appeal to issue an order to show cause.

Dated: June 2 1, 2011                    Respectfully submitted,

_D lls Sm_

DALLAS SACHER
Attorney for Petitioner,
Milan Paul Pakes

- 39 -

Exhibit F



**COPY**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| In re MILAN PAUL PAKES,<br><br>on Habeas Corpus. | H036227<br>(Santa Clara County<br>Super. Ct. No. CC131032) |
| --- | --- |

Court of Appeal - Sixth App. Dist.

**FILED**

**MAY 2 5 2011**

MICHAEL J. YERLY, Clerk

By _____ DEPUTY

BY THE COURT:

The petition for writ of habeas corpus is denied.

**RECEIVED**

MAY 26 2011

S•D•A•P

(Bamattre-Manoukian, Acting P. J., Mihara, J., and Lucas, J.,\*
participated in this decision.)

Dated _____ _____    BAMATTRE - MANOUKIAN, J.   Acting P. J.

---

\*    Judge of the Santa Clara County Superior Court, assigned by the Chief Justice
pursuant to article VI, section 6 of the California Constitution.

Exhibit G

Court of Appeal, Sixth Appellate District - No. H036227

### S194379

# IN THE SUPREME COURT OF CALIFORNIA

### En Banc

In re MILAN PAUL PAKES on Habeas Corpus.

The petition for review is denied.

SUPREME COURT
FILED

SEP 01 2011

AUG 3 1 2011

Frederick K. Ohlrich Clerk

_____
Deputy

CANTIL-SAKAUYE
_____
*Chief Justice*

Exhibit H

Finally, the driving other than on the right side of the road violation (Vehicle Code section 21650) was highly problematic. As defense counsel argued to the jury, parking on a curb does not fall within the statute. (RT 411-412.) Thus, it is probable that the jury also rejected this violation.

Assuming arguendo that the test of *Chapman v. California*, supra, 386 U.S. 18 applies, the judgment must still be reversed. Three of the four remaining violations were only weakly supported by the evidence. Thus, it is quite likely that the section 21657 violation was one of the three on which the jury relied.

It cannot be overlooked that the jury posed a question about the evading charge and asked for the rereading of several portions of the testimony. (ACT 1.) These requests present an objective indication that the jury was far from certain about appellant's guilt. (*People v. Pearch* (1991) 229 Cal.App.3d 1282, 1295 ["[j]uror questions and requests to have testimony reread are indications the deliberations were close. [Citations.]"].) The conviction must be reversed.

C. The Trial Court Erred Under The Due Process Clause Of The Fifth And Fourteenth Amendments By Allowing The Jury To Consider A Violation Of Vehicle Code Section 21650 As One Of The Qualifying Vehicle Code Violations.

The trial court instructed the jury that it could rely on Vehicle Code

- 41 -

section 21650 as establishing one of the three requisite traffic violations. (RT

372-373, CT 241.) The instruction was erroneously given since the statute has

no application to the instant facts.

In material part, section 21650[5]/ provides that "[u]pon all highways, a

vehicle shall be driven upon the right half of the roadway" except in certain

situations. In the People's view, appellant violated section 21650 when he

drove the front wheels of his vehicle onto the curb at the conclusion of the

chase. (RT 387-388.) Simply stated, section 21650 does not cover the

conduct in question.

The introductory phrase of section 21650 limits its ambit to conduct

_____

[5]Vehicle Code section 21650 provides:

"Upon all highways, a vehicle shall be driven upon the right half of the roadway, except as follows:

"(a) When overtaking and passing another vehicle proceeding in the same direction under the rules governing that movement.

"(b) When placing a vehicle in a lawful position for, and when the vehicle is lawfully making, a left turn.

"(c) When the right half of a roadway is closed to traffic under construction or repair.

"(d) Upon a roadway restricted to one-way traffic.

"(e) When the roadway is not of sufficient width.

"(f) When the vehicle is necessarily traveling so slowly as to impede the normal movement of traffic, that portion of the highway adjacent to the right edge of the roadway may be utilized temporarily when in a condition permitting safe operation.

"(g) This section does not prohibit the operation of bicycles on any shoulder of a highway, where the operation is not otherwise prohibited by this code or local ordinance."

performed "[u]pon all highways." By definition, the act of driving onto a curb is not conduct committed on a "highway."

A "highway" is defined as "a way or place of whatever nature, publicly maintained and open to the use of the public for purposes of vehicular travel." (Vehicle Code section 360.) For two reasons, a curb does not fall within the quoted definition.

First, as a matter of common practice, curbs are not maintained "for purposes of vehicular travel." Thus, driving on the curb falls outside section 21650.

Second in San Jose, curbs are not necessarily "publicly maintained." Rather, the owner of real property has the right to repair the curb abutting his premises. (San Jose Municipal Code, chapter 13.08, section 13.08.020.)[6] Since there was no showing in this case that the curb in question was "publicly maintained," a violation of section 21650 was not established.

_____

[6]San Jose Municipal Code, chapter 13.08, section 13.08.020 provides:
"No cement or artificial stone sidewalk, driveway, curb or gutter shall be constructed until the person proposing to construct the same shall have procured from the superintendent of streets a permit which shall contain the name of the owner of the premises abutting on the proposed sidewalk, driveway, curb or gutter, the width and length of said sidewalk, driveway, curb or gutter, and the name of the contractor, or in case said work is to be done by day labor, the name of the person who is to have actual charge of said work."

- 43 -

It is also worth nothing that there is a specific statute which criminalizes the act of driving on a sidewalk. (Vehicle Code section 21663.) Obviously, section 21663 would have no purpose if section 21650 was construed to include driving performed other than on the roadway.

Aside from the plain meaning of the phrase "upon the highways," an examination of the purpose underlying section 21650 further supports appellant's position. The plain purpose of section 21650 is to regulate the act of "driving." Contrary to the People's thesis, appellant did not "drive" in a place other than on the right side of the roadway. Rather, appellant *parked* his vehicle on the curb. This conclusion is inescapable since there is a specific parking statute which governs the conduct in this case.

Pursuant to Vehicle Code section 22502, subdivision (a),[7] a vehicle must be parked parallel to the curb and no more than 18 inches from the curb. Appellant violated section 22502 when he left his vehicle with the front wheels on the curb. Thus, it is apparent that the Legislature intended to treat

---

[7]Vehicle Code section 22502, subdivision (a) provides:

"Except as otherwise provided in this chapter every vehicle stopped or parked upon a roadway where there are adjacent curbs shall be stopped or parked with the right-hand wheels of such vehicle parallel with and within 18 inches of the right-hand curb, except that motorcycles shall be parked with at least one wheel or fender touching the right-hand curb. Where no curbs or barriers bound any two-way roadway, right-hand parallel parking is required unless otherwise indicated."

- 44 -

appellant's conduct as a parking violation rather than as a driving violation.

Even assuming that section 21650 can be applied to the instant facts, appellant's conduct fell within one of the exceptions to liability. Under section 21650, subdivision (b), a driver may move from the right side of the road for the purpose of making a lawful left turn. Here, appellant had the legal right to move to the left for the purpose of parking his vehicle. Thus, he did not violate section 21650.

Appellant will not belabor the obvious. As a matter of law, the act of pulling onto the curb did not constitute a violation of section 21650. The court erred in instructing the jury on section 21650.

In the preceding section, appellant has demonstrated that reversible error is shown if this court should conclude that it was error to instruct on any of the five traffic violations. (See pp. 39-41, supra.) Under the due process clauses of the state and federal Constitutions, the judgment must be reversed. (*Morgan*, supra, 42 Cal.4th 593, 613; *Sandstrom*, supra, 442 U.S. 510, 526.)

D.     Appellant Was Deprived of the Effective Assistance of Counsel under the Sixth and Fourteenth Amendments to the Federal Constitution When His Trial Attorney Failed to Object to Instruction on the Vehicle Code Section 22107 Violation on the Grounds That the Violation Was Not Proven at the Preliminary Hearing.

It is a fundamental principle of California law that the People may not

- 45 -

proceed on a charge in the trial court unless the evidentiary basis for the charge was first presented at the preliminary hearing. (*People v. Burnett* (1999) 71 Cal.App.4th 151, 165.) Here, the People failed to adduce any evidence at the preliminary hearing regarding appellant's alleged failure to signal before pulling onto the curb. However, defense counsel failed to bring this omission to the court's attention. Given these circumstances, appellant was deprived of the effective assistance of counsel.

A meritorious claim of ineffective assistance of counsel requires a two part showing. First, the defendant must demonstrate that his attorney's performance fell below the objective standard of prevailing professional norms. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688.) Second, the defendant must establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Id.* at p. 694.)

With regard to prong one, deficient performance is shown. At the preliminary hearing, Sergeant St. Amour described appellant's act of driving onto the curb. However, Sergeant St. Amour made no mention of appellant's alleged failure to signal before making his turn.

"Q.    So at some point the defendant did pull the vehicle over?

"A.    Yes, in front of - - referring to the police report,
        868 South 2nd Street. He drove up onto the curb,
        parked the vehicle almost on the sidewalk.

"Q.    Is that a Vehicle Code violation?

"A.    Yes, it is.

"Q.    Aside from that, did you observe the defendant
        make any other Vehicle Code violations from the
        time when you first saw him and put on your
        sirens?

"A.    Just going against traffic, went the wrong way on
        a one-way street, his speed was about 35 in a 30-
        mile-an-hour zone when I was behind him. And
        every light he approached was green for our
        direction. So other than those two violations,
        no." (CT 62-63 in H026104.)

Without doubt, defense counsel could have precluded the jury's

consideration of the Vehicle Code section 22107 violation had an objection

been made. This is so since the violation was "not shown by the evidence

taken at the preliminary hearing." (*People v. Burnett*, supra, 71 Cal.App.4th

151, 166-167.)

*Levy v. Superior Court* (1973) 31 Cal.App.3d 427 illustrates the merit

of appellant's position. In *Levy*, the defendant was originally charged with

several felony offenses and two misdemeanor counts relating to possession of

a firearm. After a mistrial, the People moved to amend the instruction to

allege a felony count for possession of a firearm by an ex-felon. The

- 47 -

amendment was based on the People's discovery that the defendant had a prior felony conviction. The Court of Appeal held that the amendment was improper since the People had failed to present any evidence of the felony conviction at the preliminary hearing: "When a prior conviction is an element of the offense sought to be charged in the information and there is no evidence of such a conviction before the magistrate, there simply is no statutory authority for including the charge in the information." (*Id.* at p. 429.)

The case at bar is indistinguishable from *Levy*. Here, the People sought to rely on an element of the offense (i.e. the section 22107 violation) without first providing any notice of the element at the preliminary hearing. Had defense counsel made this problem known to the court, the People would have been precluded from relying on the section 22107 violation.

Oftentimes, the People will claim that a trial attorney's failure to make a particular objection was motivated by tactical concerns. Here, the record shows that defense counsel objected to any instruction on the section 22107 violation. (RT 351-352.) Thus, there was no tactical decision to allow the section 22107 violation to go to the jury. (See *People v. Asbury* (1985) 173 Cal.App.3d 362, 365-366 [record demonstrated a lack of tactical choice in failing to make a specific objection since counsel objected on other grounds]; accord, *People v. Camilleri* (1990) 220 Cal.App.3d 1199, 1202-1203.)

- 48 -

The remaining question is whether there is a reasonable probability that

appellant would have been acquitted absent the error. (*Strickland*, supra, 466

U.S. 668, 694.) Such a probability exists.

Appellant has already demonstrated that the People had grave problems

with three of the other four alleged Vehicle Code violations. (See pp. 39-41,

supra.) This analysis need not be repeated. Had the section 22107 violation

been excluded from the jury's consideration, the jury may well have acquitted

appellant.

E.   The Trial Court Erred Under The Due Process
     Clause Of The Fifth And Fourteenth
     Amendments By Instructing The Jury That
     Appellant Bore The Burden Of Proving That His
     Act Of Driving 35 MPH Was Not Violative Of
     The Basic Speed Law.

The trial court instructed the jury that appellant's act of speeding could

constitute one of the three traffic violations required by Vehicle Code section

2800.2. The instruction was as follows:

"Vehicle Code section 22351(b) provides that the speed of any
vehicle upon a street or highway in excess of the posted speed
limit is unlawful *unless the defendant establishes by competent
evidence* that the speed in excess of the posted speed limit did
not constitute a violation of the basic speed law at the time,
place and under the conditions then existing. The basic speed
law is that no person shall drive a vehicle upon a highway at a
speed greater than is reasonable or prudent, having due regard
for weather, visibility, the traffic on, and the surface and width
of, the street or highway, and in no event at a speed that
endangers the safety of persons or property." (RT 372, CT 241,

- 49 -

emphasis added.)

As the emphasized language reveals, the trial court advised the jury that appellant bore the burden of establishing that his conduct was not violative of the basic speed law. The instruction was improper since it erroneously advised the jury that appellant had a burden of proof with regard to the central factual issue before the jury.

Pursuant to Vehicle Code section 22351, subdivision (b)[8]/ it is unlawful to drive in excess of the posted speed limit "unless the defendant establishes by competent evidence" that his speed was not violative of the basic speed law. In turn, the basic speed law provides that a person may not drive "at a speed greater than is reasonable or prudent having due regard for weather, visibility, the traffic on, and the surface and width of, the highway, and in no event at a speed which endangers the safety of persons or property."

(Vehicle Code section 22350.)[9]/

_____

[8]Vehicle Code section 22351, subdivision (b) provides:

"The speed of any vehicle upon a highway in excess of the prima facie speed limits in Section 22352 or established as authorized in this code is prima facie unlawful unless the defendant establishes by competent evidence that the speed in excess of said limits did not constitute a violation of the basic speed law at the time, place and under the conditions then existing."

[9]Vehicle Code section 22350 provides:

"No person shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent having due regard

Properly understood, section 22351, subdivision (b) includes an affirmative defense to the crime of driving in excess of the posted speed limit. The affirmative defense is that the speed was reasonable within the terms of the basic speed law. If there is evidence supportive of the defense, it becomes the People's burden to disprove the defense beyond a reasonable doubt. This understanding of the scheme is confirmed by a recent Supreme Court case.

In *People v. Mower* (2002) 28 Cal.4th 457, the court construed the medical marijuana law which provides certain defenses to the crimes of marijuana possession and cultivation. The court indicated that when a statute allocates a burden of producing evidence on the defendant on issues which relate to his guilt or innocence, the defendant need only raise a reasonable doubt as to his guilt. (*Id.* at pp. 479-481; accord, *People v. Salas* (2006) 37 Cal.4th 967, 981-982 ["we held in *Mower* that the defendant had the burden of producing evidence to show that marijuana was grown for personal medicinal purposes . . . ."].)

Importantly, the term "producing evidence" is a misnomer. The defendant need not actually present any evidence. Rather, he is entitled to proceed on his affirmative defense even if the exculpatory evidence is shown

_____

for weather, visibility, the traffic on, and the surface and width of, the highway, and in no event at a speed which endangers the safety of persons or property."

by the People's evidence. *(People v. Loggins* (1972) 23 Cal.App.3d 597, 603-604 [although then Penal Code section 1105 provided that the defendant had "the burden" of showing that a homicide was justified, the statute was satisfied by evidence of justification which was presented by "the prosecution alone . . . ."].)[10]/

In the case at bar, there was substantial evidence that appellant's speed was "reasonable" and "prudent." (Section 22350.) Appellant drove only 5 mph over the posted limit. Moreover, there was no evidence that appellant was overtaking other vehicles or in any way endangering public safety due to his speed. Thus, there was an ample basis in the record which would have allowed the jury to find that appellant was not guilty of a speeding violation.

However, the court's instruction essentially advised the jury that it was appellant's burden to "establish" the defense. The instruction was erroneous since it served to shift the burden of proof to appellant.

*People v. Loggins*, supra, 23 Cal.App.3d 597 establishes this conclusion. There, the defendant raised a claim of self defense in a homicide

---

[10]It has been suggested that section 22351 is "not a charging statute .
. . but, rather, it is merely a statute to allocate the burden of proof in prosecutions under Vehicle Code section 22350." *(People v. Behjat* (2000) 84 Cal.App.4th Supp. 1, 4 [conc. opn. of Wilde, J.).) For the reasons stated above, this suggestion is in error. Section 22351 states an offense (i.e. driving in excess of the speed limit) which is subject to the affirmative defense that the act of speeding was "reasonable" and "prudent." (Section 22350.)

case. At the time of trial, then Penal Code section 1105 placed the "burden"

on proving justification on the defendant. In reliance on section 1105, the

trial court instructed the jury that "'the burden is on the defendant to raise a

reasonable doubt as to his guilt on the charge of murder.'" (*Id.* at p. 599, fn.

omitted.) The court held that the instruction was erroneous since the purpose

of section 1105 had been satisfied once substantial evidence of self defense

was presented. (*Id.* at pp. 603-604.) Thus, the trial court should have simply

instructed the jury with "the standard instruction on proof of guilt beyond a

reasonable doubt . . ." (*Id.* at p. 604.)

Importantly, CALCRIM contains an instruction concerning section

22351 which is consistent with the analysis in *Loggins.* In material part,

CALCRIM 595 provides:

"The People have the burden of proving beyond a reasonable
doubt that the defendant's rate of travel was not reasonable
given the overall conditions, even if the rate of travel was faster
than the prima facie speed law. If the People have not met this
burden, you must find the defendant did not violate the prima
facie speed law."

The trial court erred by failing to give CALCRIM 595 in lieu of its own

special instruction. As CALCRIM 595 shows, there is a world of difference

between expressly placing the burden of proof on the People and, as here,

suggesting that the defendant has the burden of persuasion.

Notwithstanding CALCRIM 595, *People v. Frazier* (2005) 128

- 53 -

Cal.App.4th 807 holds that it is permissible to instruct the jury that the defendant bears the burden of raising a reasonable doubt as to his guilt. In *Frazier*, the defendant raised a compassionate use defense in a marijuana case. The court upheld an instruction which provided that the "'burden is upon the defendant to raise a reasonable doubt'" regarding his defense. (*Id.* at pp. 816-822.) In the course of its analysis, the *Frazier* court distinguished *Loggins* on the grounds that *Loggins* involved a murder charge where a "presumption of malice" was at issue. (*Id.* at pp. 819-820.) *Frazier* is unpersuasive for two reasons.[11]/

First, contrary to the *Frazier* court's view, there is no "presumption of malice" in a murder case. (*Frazier*, supra, 128 Cal.App.4th at p. 820.) Rather, the government bears the burden of proving the element of malice just as it has the burden to prove any other element. Thus, the holding in *Loggins* cannot be understood as being peculiar to homicide cases.

Second, on a more fundamental level, the *Frazier* court ignored the distinction between the burden of producing evidence and the burden of proof. The burden of producing evidence means only that a party has the obligation "to introduce evidence sufficient to avoid a ruling against him on

---

[11]In the pending case of *People v. Mentch*, S148204, the California Supreme Court has asked the parties to address the merit of the analysis in *Loggins* and *Frazier*. (Order of February 7, 2007.)

the issue." (Evidence Code section 110.) As *Loggins* coherently explains, once the defendant produces sufficient evidence in support of his affirmative defense, his burden evaporates and "should be excluded from the jury charge . . . ." (*Loggins*, supra, 23 Cal.App.3d 597, 603-604.)

The error is reversible per se. Insofar as the jury was misinstructed concerning the burden of proof, it is impossible to say that the error was harmless. (*Sullivan v. Louisiana* (1993) 508 U.S. 275, 281 [erroneous instruction on reasonable doubt is structural error]; *Gibson v. Ortiz* (9th 2004) 387 F.3d 812, 824-825 [structural error found where instruction implied that defendant could be found guilty on the basis of propensity evidence].)

Notwithstanding the foregoing authorities, the California Supreme Court has left open the question of whether federal constitutional error is shown when the jury is misinstructed regarding the party which bears the burden of proof regarding an affirmative defense. (*People v. Mower*, supra, 28 Cal.4th 457, 484.) Here, the error is prejudicial regardless of whether the standard of *Chapman v. California*, supra, 386 U.S. 18 or that of *People v. Watson* (1956) 46 Cal.2d 818 is applied.

Appellant's speed was only 5 mph over the posted limit. Aside from this de minimis violation, there was no evidence that appellant was overtaking other vehicles or endangering them. Since law abiding citizens frequently

drive 5 mph over the limit on city streets, it is virtually certain that the jury would not have found a speeding violation but for the erroneous instruction which shifted the burden of proof to appellant.

In positing this conclusion, appellant is well aware that Sergeant St. Amour offered his opinion that appellant's speed was unsafe since he had a ladder in his pickup which was "loose." (RT 303-304.) With all due respect for Sergeant St. Amour, this testimony is ludicrous.

The record otherwise shows that appellant drove on the freeway at or above the speed limit. He also made sharp turns on the freeway. If the ladder did not fall out on the freeway, it certainly was not going to fall out merely because appellant was driving 35 mph rather than 30 mph.

In addition, it cannot be overlooked that the instruction contained no standard by which appellant was to "establish" his defense. (RT 372, CT 241.) Thus, we have absolutely no clue as to the degree of proof which the jury placed on appellant. Under these circumstances, it is quite simply impossible to conclude that the error was harmless. This is so since the jury was left so bereft of accurate guidance that this court can have no confidence that the jury would have found a speeding violation based on a correct instruction. (*People v. Watson*, supra, 46 Cal.2d 818, 837 [reversal is required when there is a "serious doubt as to whether the error has affected the

result."].)

*People v. Banks* (1976) 67 Cal.App.3d 379 presents on analogous situation. There, as here, the court vaguely instructed the jury that the defendant bore the "'burden'" of proving self defense. (*Id.* at p. 383.) The instruction was held to be prejudicial.

"The court's extemporaneous instruction in the instant case did not purport to simply place a procedural burden on the accused, or require him merely to 'raise a reasonable doubt' as to his guilt. Here the court repeatedly advised the jury that the defense was required '*to prove* whether or not the homicide was committed by way of self defense.' (Italics added.)" (*Banks*, supra, 67 Cal.App.3d at p. 384.)

The instruction in this case is materially the same as the one in *Banks*. The instant jury was told that appellant had to "establish" his defense. (RT 372, CT 241.) As in *Banks*, the instruction was prejudicial since it went far beyond an advisement that appellant merely had to "'raise a reasonable doubt' as to his guilt." (*Banks*, supra, 67 Cal.App.3d at p. 384.)

The bottom line is that a close factual question was presented as to whether appellant violated section 22351. Under these circumstances, the erroneous jury instruction must be deemed prejudicial under any standard of review.

Finally, appellant has previously demonstrated that three of the other four alleged traffic violations were improperly charged. Given the error with

- 57 -

respect to the speeding violation, it is manifest that the section 2800.2 conviction must be reversed.

F.   If This Court Should Conclude That Two, Three or Four Of The Alleged Vehicle Code Violations Were Improperly Considered By The Jury, Reversal Is Compelled.

Appellant has contended that reversal is required if this court should hold that any one of the four challenged Vehicle Code violations were improperly considered by the jury. If this contention is rejected, the judgment must nonetheless be reversed.

Under the due process clause of the federal Constitution, a remedy must be given when several errors result in cumulative prejudice. (*Chambers v. Mississippi* (1973) 410 U.S. 284, 302-303; see also *People v. Hill* (1998) 17 Cal.4th 800, 844.) This is such a case.

Of the five Vehicle Code violations alleged by the People, appellant has shown that four were improperly employed. As a simple matter of mathematics, the judgment must be reversed since the single remaining violation is not sufficient to sustain the conviction.

Assuming that this court should find that only two of the four challenged violations were improperly considered, reversal is still required. The only uncontested violation was appellant's failure to ensure that Ms. Fugate wore her seatbelt. All of the remaining violations were problematic.