1  KAMALA D. HARRIS
   Attorney General of California
2  PEGGY S. RUFFRA
   Supervising Deputy Attorney General
3  JEFFREY M. LAURENCE
   Deputy Attorney General
4  State Bar No. 183595
    455 Golden Gate Avenue, Suite 11000
5   San Francisco, CA  94102-7004
    Telephone:  (415) 703-5897
6   Fax:  (415) 703-1234
    E-mail:  Jeff.Laurence@doj.ca.gov
7  *Attorneys for Respondent*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

|  |  |
|---|---|
| **MILAN PAKES,**<br><br>                              Petitioner,<br><br>        v.<br><br>**P.D. BRAZELTON,  Acting Warden,**<br><br>                              Respondent. | C 11-5284 CRB (PR)<br><br>**POINTS AND AUTHORITIES IN SUPPORT OF ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS** |

**TABLE OF CONTENTS**

**Page**

Statement of the Case ................................................................................................. 1

Statement of Facts ..................................................................................................... 2

Argument .................................................................................................................... 6

    AEDPA standard of review .................................................................................. 6

    I.    The state court's rejection of petitioner's claim of ineffective assistance of counsel for entering into a stipulation at trial was not unreasonable ................... 8

        A.    Applicable legal standard ................................................................ 8

        B.    Underlying factual background for the claimed error ............................ 10

        C.    The state court reasonably rejected petitioner's ineffective assistance claim ................................................................................ 14

        D.    The state court reasonably found no prejudice ..................................... 18

    II.    The state court reasonably rejected petitioner's claim of a *Brady* violation ........ 19

        A.    Applicable legal standard ................................................................ 20

        B.    The state court's rejection of petitioner's claim was not unreasonable .................................................................................... 21

            1.    The pursuit policy was publicly available ................................. 21

            2.    Not impeaching ...................................................................... 22

            3.    No materiality ........................................................................ 25

    III.    The state court reasonably rejected petitioner's claim of ineffective assistance for counsel's declining to obtain the pursuit policy ........................... 26

    IV.    The state court's rejection of petitioner's claim the state knowingly presented false evidence was not unreasonable ................................................ 27

        A.    Applicable legal standard ................................................................ 28

        B.    The state court reasonably rejected petitioner's claim .......................... 28

    V.    The state court reasonably rejected petitioner's claim of cumulative error .......... 33

    VI.    The state court's rejection of petitioner's claim of prejudicial instructional error with respect to a violation of the basic speed law as one of five predicate moving violations for purposes of violating Vehicle Code section 2800.2, fleeing a pursuing peace officer, was not unreasonable .......................... 34

        A.    Legal background ............................................................................ 34

    VII.    Petitioner's challenge to permitting the jury to consider California Vehicle Code § 21650 as a predicate for felony evading is not cognizable on federal habeas review and was reasonably rejected by the state court ........................... 40

Conclusion .................................................................................................................. 44

# TABLE OF AUTHORITIES

**Page**

C‍ASES

*Allen v. Woodford*
  395 F.3d 979 (9th Cir. 2005) ............................................................. 28, 31

*Anderson v. Calderon*
  232 F.3d 1053 (9th Cir. 2000) ............................................................. 9

*Arizona v. Youngblood*
  488 U.S. 51 (1988) ............................................................................. 24

*Babbit v. Calderon*
  151 F.3d 1170 (9th Cir. 1998) ............................................................. 9, 17

*Bell v. Cone*
  535 U.S. 685 (2002) ........................................................................... 10

*Bradshaw v. Richey*
  546 U.S. 74 (2005) ............................................................................. 41

*Brady v. Maryland*
  373 U.S. 83 (1963) ....................................................................... passim

*Brecht v. Abrahamson*
  507 U.S. 619 (1993) ..................................................................... passim

*Byrd v. Lewis*
  566 F.3d 855 (9th Cir. 2009) ............................................................. 38

*California v. Trombetta*
  467 U.S. 479 (1984) ........................................................................... 24

*Coe v. Bell*
  161 F.3d 320 (6th Cir.1998) ............................................................... 21

*Dodds v. Stellar*
  77 Cal. App. 2d 411 (1946) ................................................................ 31

*Donnelly v. DeChristoforo*
  416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974) ......................... 33

*Edwards v. Lamarque*
  475 F.3d 1121 (9th Cir. 2007) (en banc) ...................................... 9, 17, 26

*Estelle v. McGuire*
502 U.S. 62 (1991).................................................................40

*Fry v. Pliler*
551 U.S. 112 (2007)................................................................8

*Garner v. Louisiana*
368 U.S. 157 (1961)...............................................................41

*Gerlaugh v. Stewart*
129 F.3d 1027 (9th Cir. 1997).............................................8

*Giglio v. United States*
405 U.S. 150 (1972)...............................................................28

*Harrington v. Richter*
131 S. Ct. 770 (2011) .....................................................passim

*Hedgpeth v. Pulido*
555 U.S. 57 (2008)..............................................37, 38, 40, 44

*Hendricks v. Calderon*
70 F.3d 1032 (9th Cir. 1995)..............................................17

*Hicks v. Feiock*
485 U.S. 624 (1988)........................................................41, 43

*Himes v. Thompson*
336 F.3d 848 (9th Cir. 2003).................................................7

*Knowles v. Mirzayance*
129 S. Ct. 1411 (2009).........................................................10

*Kyles v. Whitley*
514 U.S. 419 (1995) ...................................................20, 21, 28

*Lawrence v. Lensing*
42 F.3d 255 (5th Cir. 1994).................................................21

*Lopez v. Schriro*
491 F.3d 1029 (9th Cir. 2007)............................................10

*McNeil v. Yellow Cab Co.*
85 Cal. App. 3d 116 (1978)..................................................40

*Mendez v. Small*
   298 F.3d 1154 (9th Cir. 2002) ...................................................................... 41, 43

*Miller-El v. Cockrell*
   537 U.S. 322 (2003).......................................................................................... 44

*Morales v. Woodford*
   336 F.3d 1136 (9th Cir. 2003) ............................................................................ 28

*Napue v. Illinois*
   360 F.3d 264 (1959)..................................................................................... 28, 33

*Pakes v. Yates*
   2007 WL 1655574 (N.D. Cal. 2007) .................................................................... 1

*Parle v. Runnels*
   505 F.3d 922 (9th Cir. 2007) ............................................................................. 34

*People v. Durham*
   70 Cal. 2d 171 (1969) ........................................................................................ 16

*People v. Howard*
   34 Cal. 4th 1129 (2005) ..................................................................................... 16

*People v. Johnson*
   15 Cal. App. 4th 169 (1993)............................................................................... 16

*People v. Powell*
   40 Cal. App. 3d 107 (1974)................................................................................ 16

*People v. Scheer*
   68 Cal. App. 4th 1009 (1998)............................................................................. 16

*People v. Superior Court* (*Romero*)
   13 Cal. 4th 497 (1996) ......................................................................................... 1

*People v. Vidaurri*
   103 Cal. App. 3d 450 (1980)............................................................................... 16

*People v. Woodard*
   23 Cal. 3d 329 (1979) ........................................................................................ 31

*Raley v. Ylst*
   470 F.3d 792 (9th Cir. 2006).............................................................................. 21

# TABLE OF AUTHORITIES
## (continued)

*Reynoso v. Giurbino*
   462 F.3d 1099 (9th Cir. 2006) ........................................................................... 7

*Ring v. Arizona*
   536 U.S. 584 (2002) ......................................................................................... 41

*Roe v. Flores-Ortega*
   528 U.S. 470 (2000) ........................................................................................ 8, 9

*Rompilla v. Beard*
   545 U.S. 374 (2005) ........................................................................................... 9

*Schriro v. Landrigan*
   550 U.S. 465 (2007) ........................................................................................... 7

*Siripongs v. Calderon*
   133 F.3d 732 (9th Cir. 1998) ............................................................................. 9

*Smith v. Stewart*
   140 F.3d 1263 (9th Cir. 1998) ........................................................................... 9

*Sophanthavong v. Palmateer*
   378 F.3d 859 (9th Cir. 2004) ............................................................................. 9

*Strickland v. Washington*
   466 U.S. 668 (1984) ................................................................................... passim

*Strickler v. Greene*
   527 U.S. 263 (1999) .................................................................................... 20, 27

*Sumner v. Mata*
   449 U.S. 539 (1981) ........................................................................................... 7

*Tapia v. Tansy*
   962 F.2d 1554 (9th Cir. 1991) ......................................................................... 28

*Tayborn v. Scott*
   251 F.3d 1125 (7th Cir. 2001) .................................................................... 28, 31

*United States v. Agurs*
   427 U.S. 97 (1976) ..................................................................................... 28, 33

*United States v. Bagley*
   473 U.S. 667 (1985) ......................................................................................... 20

*United States v. Delgado*
  350 F.3d 520 (6th Cir. 2003) .................................................................. 21

*United States v. Dominguez Benitez*
  542 U.S. 74 (2004) ................................................................................ 8

*United States v. Dupuy*
  760 F.2d 1492 (9th Cir. 1985) ............................................................. 21

*United States v. Haili*
  443 F.2d 1295 (9th Cir. 1971) ............................................................. 34

*United States v. Payne*
  63 F.3d 1200 (2d Cir. 1995) ................................................................ 21

*United States v. Sherlock*
  962 F.2d 1349 (9th Cir. 1992) ............................................................. 28

*United States v. Zuno-Arce*
  339 F.3d 886 (9th Cir. 2003) ............................................................... 28

*United States v. Zuno-Arce*
  44 F.3d 1420 (9th Cir. 1995) ............................................................... 28

*Wainwright v. Goode*
  464 U.S. 78 (1983) ............................................................................... 41

*Whelchel v. Washington*
  232 F.3d 1197 (9th Cir. 2000) ............................................................. 33

*Wisconsin v. Mitchell*
  508 U.S. 476 (1993) ............................................................................. 41

*Wood v. Allen*
  130 S. Ct. 841 (2010) ............................................................................ 9

*Wood v. Bartholomew*
  516 U.S. 1 (1995) ........................................................................... 20, 25

*Woodford v. Visciotti*
  537 U.S. 19 (2002) ........................................................................... 7, 10

*Yarborough v. Gentry*
  540 U.S. 1 (2003) ............................................................................ 9, 10

**STATUTES**

Antiterrorism and Effective Death Penalty Act of 1996 ................................................................ 6

California Evidence Code
§ 352 ................................................................ 11, 13, 15, 19

California Penal Code
§ 273a(a) ................................................................ 1
§ 290 ................................................................ 11, 15
§ 667.5(b) ................................................................ 1
§ 1170.12 ................................................................ 1

California Vehicle Code
§ 2800.2 ................................................................ passim
§ 20002(a) ................................................................ 1
§ 21650 ................................................................ 39, 40, 41
§ 21657 ................................................................ 35, 39
§ 22107 ................................................................ 39
§ 27360.5 ................................................................ 38

United States Code, Title 28
§ 2254(d) ................................................................ 7
§ 2254(d)(1) ................................................................ 7, 10
§ 2254(d)(2) ................................................................ 9, 44
§ 2254(e)(1) ................................................................ 7, 18, 44

**CONSTITUTIONAL PROVISIONS**

United States Constitution
Sixth Amendment ................................................................ 9

**OTHER AUTHORITIES**

California Jury Instructions, Criminal
No. 2.21.1 ................................................................ 30

Judicial Council of California, Criminal Jury Instructions
No. 226 ................................................................ 30
No. 2181 ................................................................ 35

# STATEMENT OF THE CASE

On July 18, 2002, the Santa Clara County District Attorney filed an information charging petitioner with child endangerment, Cal. Penal Code § 273a(a), evading a police officer, Cal. Vehicle Code § 2800.2, and misdemeanor hit and run causing property damage, Cal. Vehicle Code § 20002(a). The information alleged two prior strike convictions and a prior prison term, Cal. Penal Code § 667.5(b) & § 1170.12. *See* 2CT 199-203. In October 2002, petitioner pleaded guilty to felony child endangerment and admitted the prior strike allegations and the prison prior, in exchange for dismissal of the other two counts. After denying petitioner's motion to dismiss the strikes pursuant to *People v. Superior Court (Romero)*, 13 Cal. 4th 497 (1996), the court sentenced him to 26 years to life in prison. Resp. Exh. 9 at 2. In June 2004, the California Court of Appeal affirmed petitioner's conviction, and denied petitioner's companion habeas petition. Resp. Exh. 9 at 2. The California Supreme Court denied review of the habeas petition. Resp. Exh. 9 at 2.

On June 7, 2007, the federal district court granted a writ of habeas corpus on the ground that defense counsel was ineffective for advising petitioner to accept the plea deal in hopes of obtaining a favorable decision on the *Romero* motion, rather than proceeding to trial. The federal court vacated the guilty plea and directed that criminal proceedings be reinitiated. 1CT 2-16; Resp. Exh. 9 at 2; *Pakes v. Yates*, 2007 WL 1655574 (N.D. Cal. 2007) (Case No. C-04-5294).

On November 13, 2007, after a full trial, the jury found petitioner guilty on all charges. 2CT 262-69. Petitioner admitted the truth of the prior conviction allegations. 2CT 268. On February 29, 2008, the trial court sentenced petitioner to state prison for 29 years to life. 2CT 339-45. On October 16, 2009, the Sixth District Court of Appeal affirmed the judgment but found the trial court erred in not staying the four-year term for the Vehicle Code section 2800.2 conviction, and remanded for a resentencing. Resp. Exh. 9. The Supreme Court denied review on February 18, 2010. Resp. Exh. 13

Petitioner also filed a companion petition for writ of habeas corpus in conjunction with his appeal. Resp. Exh. 6. The Sixth District Court of Appeal issued an order to show cause

1

1  returnable to the superior court with respect to petitioner's claim of ineffective assistance of

2  counsel for entering into a stipulation during trial.  Resp. Exh. 11.

3       On March 8, 2010, Santa Clara County Superior Court heard and rejected petitioner's state

4  habeas claim of ineffective assistance of counsel.  Resp. Exh. 12.  The superior court resentenced

5  petitioner to a term of 25 years to life in state prison, and on May 25, 2011, the Sixth District

6  Court of Appeal affirmed petitioner's sentence with minor modifications to the abstract of

7  judgment.  Resp. Exh. 14.  That same day the appellate court denied petitioner's renewed state

8  habeas petition.  Resp. Exhs. 15, 16.  On August 31, 2011, the California Supreme Court denied

9  petitioner's petition for review from the denial of his state habeas petition.  Resp. Exhs. 17, 18.

10  Petitioner filed the current federal habeas petition in this Court on October 31, 2011.

11  **STATEMENT OF FACTS**

12       Petitioner met and befriended the victim Adrienne Fugate in 2001, when Adrienne was 12

13  years old.  4RT 226-27.  Petitioner lived in the same mobile home park as Adrienne.  4RT 226.

14  Petitioner, who was 36 at the time, became friends with Adrienne's family, and would hang out

15  with Adrienne, her father, and her sister, at their house, essentially every day of the week.  4RT

16  227, 229.  Petitioner would come over to the house pretty much any time he was not out working,

17  and would occasionally spend the night over as well, sleeping on the couch.  4RT 227, 229-30

18       In late 2001, petitioner started teaching Adrienne how to drive his pickup truck.  He would

19  frequently drive her around the mobile home park and let her drive around that park.  4RT 227-

20  29.  She never wore a seatbelt when she was a passenger in petitioner's truck because he

21  informed her that the passenger seatbelt clips did not work.  4RT 229.

22       Petitioner spent the night at Adrienne's house on December 14, 2001.  He invited Adrienne

23  to come with him to a chimney sweeping job he had scheduled for the following day.  4RT 230,

24  263, 289.  Adrienne agreed.  4RT 230.  Adrienne's parents gave their permission, and the

25  following day petitioner and Adrienne left for the job at around 2:30 p.m. in petitioner's truck.

26  4RT 230-31, 243.

27       Adrienne noted that petitioner drove very fast on the freeway heading to the job, despite the

28  fact that she was not wearing a seatbelt.  4RT 232.  The chimney sweeping job took two or three

2

hours.  They headed back home sometime after 5 p.m.  4RT 246.  Petitioner drove very fast on

Highway 87, talking to Adrienne, when suddenly petitioner encountered slow traffic.  4RT 233,

263.  Petitioner slammed on the brakes, and his truck collided with the rear of an SUV in front of

him.  4RT 233.

That SUV was driven by David Gonzalez, an off-duty San Jose Police Officer.  4RT 263.

Officer Gonzalez had been driving slowly in traffic in the left lane of the highway when his car

was rear-ended by petitioner.  Officer Gonzalez pulled over to the left shoulder of the freeway to

exchange information with petitioner.  4RT 263-64.  Petitioner, who was still in the left lane,

pulled up alongside Officer Gonzalez.  Officer Gonzalez lowered the passenger window and

spoke to petitioner through petitioner's open window.  He asked petitioner to pull over so they

could exchange information.  4RT 265, 274.

Officer Gonzalez noted that the impact from petitioner's truck was not particularly strong

or significant and did not cause much damage.  4RT 265-66, 268, 271-74, 286.  Officer Gonzalez

was not angry or rude with petitioner; he just wanted petitioner's information.  4RT 265, 274.

Petitioner agreed to pull over.  4RT 266.

Petitioner drove onto the left shoulder in front of Officer Gonzalez and appeared to be

stopping.  Petitioner suddenly accelerated and fled the scene, driving on the left shoulder to get

around the slow traffic on the freeway.  4RT 266-67, 274.  Adrienne was scared by petitioner's

driving and screamed at petitioner to stop and pull over.  4RT 236.  Petitioner told Adrienne "to

shut up and duck down so they don't see you."  4RT 236.

Officer Gonzalez was surprised petitioner took off.  He drove after petitioner, following

petitioner on the left shoulder.  4RT 267.  Because he was on the shoulder and because of the

slowed traffic in the left lane, Officer Gonzalez was unwilling to drive faster than 35 miles per

hour.  4RT 267, 279.  He could not determine petitioner's exact speed, but he estimated that

petitioner was driving on the shoulder at 40 to 50 miles per hour.  4RT 267, 279-81. Petitioner

was definitely going "a lot faster than" he was.  4RT 279-81.

Officer Gonzalez used his cell phone to call San Jose Police dispatch and report petitioner's

actions and location.  4RT 260.  Petitioner continued on the shoulder until he got past the area of

3

congested traffic and then pulled back onto the freeway.  4RT 277-81.  Officer Gonzalez, who was about a quarter mile behind petitioner, did the same.  4RT 267, 281  Petitioner was weaving from lane to lane without signaling, cutting off cars with his abrupt lane changes, forcing the other cars to brake suddenly to avoid him.  4RT 268.  Adrienne was screaming in fear during petitioner's wild ride, pleading with him to stop.  4RT 236.  Petitioner was passing cars "like they were just nothing."  4RT 236.  Officer Gonzalez could see Adrienne sliding from side to side inside the cab of petitioner's truck as petitioner was weaving erratically from lane to lane.  4RT 269.

Petitioner quickly exited Highway 87 onto Interstate 280 without signaling.  4RT 260.  He continued to cut off cars and weave between lanes before exiting onto 6th Street.  4RT 269, 283.  Officer Gonzalez exited the freeway about 20 seconds after petitioner and continued to follow him on surface streets.  4RT 270.

Adrienne screamed at petitioner to pull over and let her out.  Petitioner told her to shut up and duck down.  4RT 238.  Petitioner drove at what Adrienne estimated was 65 miles per hour on the surface streets.  4RT 238, 257, 261.  Officer Gonzalez followed petitioner until he saw a marked police car pick up the chase.  4RT 270.

Petitioner turned the wrong direction onto a one-way street.  4RT 238.  Adrienne described how petitioner drove straight ahead despite the fact that a car was approaching in the same lane.  Petitioner drove straight at the on-coming traffic, forcing the other car to swerve out of the way.  4RT 238.

San Jose Police Sergeant Robert St. Amour was on duty in his marked police car at around 5:45 p.m. and heard the dispatch to be on the lookout for petitioner's truck.  4RT 289-90.  Sergeant St. Amour was on First Street near Humboldt Street when he saw petitioner's truck driving westbound on the block of Humboldt Street that was one-way eastbound.  4RT 292-93.  Petitioner then turned northbound on Second Street, which was one-way southbound.  4RT 294.  Sergeant St. Amour saw three or four cars traveling south on Second street that had to avoid petitioner.  4RT 295-96.

At that location, First and Second streets are separated by a narrow strip of park, which allowed Sergeant St. Amour to keep an eye on petitioner as he accelerated to cut petitioner off at the next cross-street, Keyes Street. 4RT 295. The officer was on First Street further north than petitioner was on Second Street. He activated his red lights and siren as he turned from First Street onto Keyes Street and headed to Second Street to intercept petitioner. 4RT 295-97. Adrienne saw the lights and heard the siren as petitioner continued driving in the wrong direction on Second Street toward Keyes, as Sergeant St. Amour cut across from Keyes Street to intercept petitioner. She mistakenly thought the officer was behind them. 4RT 255.

Sergeant St. Amour reached the intersection of Second Street and Keyes Street ahead of petitioner, who was still 75 to 100 feet from the intersection. 4RT 296-97. The officer positioned his patrol car, with red lights flashing and sirens on, across the end of Second Street, blocking the center lane and portions of the right and left lanes, in an attempt to block petitioner in. 4RT 296-97, 315. Petitioner continued up Second Street going the wrong way, directly toward the officer's patrol car. 4RT 298. When petitioner reached the patrol car, he had just enough room to squeeze past the front of the patrol car in the right lane and make a right turn onto Keyes Street. 4RT 298. Petitioner went a block on Keyes Street and made a left turn on Third Street. 4RT 298. Sergeant St. Amour started to drive after petitioner on Keyes Street, but as he reached for the radio to report the chase, his glasses slipped off, and he had to slow down momentarily to put them back on. 4RT 298-300, 320-21. Petitioner had just turned the corner when Sergeant St. Amour was able to continue the chase. 4RT 300.

Sergeant St. Amour accelerated onto Third Street and then matched speeds with petitioner. 4RT 300. Sergeant St. Amour checked his speedometer. Petitioner was driving 35 miles per hour, when the posted speed limit on Third Street was 30 miles per hour. 4RT 300. Sergeant St. Amour continued to chase petitioner with lights and sirens activated. 4RT 301. Petitioner went two blocks on Third Street, then turned left on Virginia Street. Petitioner went one block on Virginia and then turned left on Second Street, now heading southbound. 4RT 301-03. On Second Street, Sergeant St. Amour again checked his speedometer. Petitioner was again driving 35 miles per hour when the posted speed limit was 30 miles per hour. 4RT 303. The officer

noted that it was dark out and the pickup truck had an unsecured ladder in the bed that was hanging over the tailgate and sliding around with each turn. The officer noted that petitioner's speed was unsafe for the conditions, time, and location. 4RT 304.

Petitioner drove in the far left lane, southbound on Second Street, which was one-way in the southbound direction. 4RT 304. Petitioner traveled a block and a half on Second Street before abruptly turning left mid-block without signaling, and pulling his front two tires over the curb and onto the five-foot strip of land between the curb and the sidewalk. 4RT 239, 304-06, 327. He yelled at Adrienne to get out of the truck so he could leave. 4RT 239.

At that moment, Sergeant St. Amour pulled up, along with another police car that had joined the chase. 4RT 306-07. Petitioner got out the truck and made a break for the house, which belonged his father. 4RT 307, 340. Sergeant St. Amour ordered petitioner to stop. Petitioner ignored him and continued to run. 4RT 307. Sergeant St. Amour intercepted petitioner, just as petitioner reached the front porch and arrested him. 4RT 307.

The parties stipulated that petitioner intended to flee following the traffic accident "because he reasonably believed that if apprehended by the police, he would be sent to state prison." 4RT 332. They also stipulated that Sergeant St. Amour was the first on-duty officer to encounter petitioner and there were no marked police cars behind petitioner when he drove the wrong way on the one-way street. 4RT 332.

Petitioner's father took the stand in petitioner's defense. He testified that he examined petitioner's truck after the chase and claimed that the passenger seatbelt was in working condition. 4RT 335. On cross-examination, he was shown numerous photographs that he had taken of those seatbelts in preparation for trial, including numerous close ups of the straps and buckles. In none of the photographs was the passenger seat belt fastened. 4RT 338-39. The father claimed he did not think photographing the belts buckled was important. 4RT 339.

## ARGUMENT

### AEDPA STANDARD OF REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which imposes a "highly deferential" standard for evaluating state court rulings and

6

"demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). Under AEDPA, the federal court has no authority to grant habeas relief unless the state court's ruling was "contrary to, or involved an unreasonable application of," clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011). "If this standard is difficult to meet, that is because it was meant to be." *Id*. at 786. The petitioner bears the burden of meeting this standard. *Visciotti*, 537 U.S. at 25.

"Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief. This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for § 2254(d) applies when a 'claim,' not a component of one, has been adjudicated." *Harrington v. Richter*, 131 S. Ct. at 784; *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006). Thus, where there is no reasoned opinion by the state court, the federal habeas court reviews the record to determine whether the state court decision was objectively unreasonable. *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).

All express and implied findings of historical fact made by the state court are presumed correct, unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981) (presumption of correctness applies to express and implied findings of fact by both trial and appellate courts).

Even if the state court's ruling is contrary to or an unreasonable application of Supreme Court precedent, that error justifies overturning the conviction only if the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507

7

U.S. 619, 637 (1993). The *Brecht* standard applies regardless whether the state court conducted a harmless error review. *Fry v. Pliler*, 551 U.S. 112 (2007). Respondent bears the burden of showing that no prejudice resulted. *See United States v. Dominguez Benitez*, 542 U.S. 74, 82 n.7 (2004).

## I. THE STATE COURT'S REJECTION OF PETITIONER'S CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL FOR ENTERING INTO A STIPULATION AT TRIAL WAS NOT UNREASONABLE

Petitioner contends that trial counsel was constitutionally ineffective for entering into a stipulation in order to limit the amount of damaging information about petitioner's motive that was placed before the jury. Trial counsel's stipulation was a quintessential informed tactical decision that, by definition, cannot serve as the basis of a claim of ineffective assistance. The state court's rejection of his allegation of ineffective assistance of counsel was not an unreasonable application of Supreme Court precedent.

### A. Applicable Legal Standard

In order to establish that counsel was ineffective, petitioner bears the burden of showing that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and that there is a reasonable probability the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88, 695-96 (1984). In considering the first prong of the test, the reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Petitioner also "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. Strategic decisions by counsel are "virtually unchallengeable." *Id*. at 690; *Gerlaugh v. Stewart*, 129 F.3d 1027, 1033 (9th Cir. 1997) ("Counsel knew about the evidence and looked into it, but chose as a tactical matter not to use it;" that choice was "immune from attack under *Strickland*").

The Supreme Court has "consistently declined to impose mechanical rules on counsel." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); *Harrington v. Richter*, 131 S. Ct. at 789 ("Rare are the situations in which the 'wide latitude counsel must have in making tactical decisions' will

8

be limited to anyone technique or approach."). Rather, the "Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices." *Id.* at 479; *see Rompilla v. Beard*, 545 U.S. 374, 381 (2005) ("A standard of reasonableness applied as if one stood in counsel's shoes spawns few hard-edged rules"). Thus, "the test is not whether another lawyer, with the benefit of hindsight, would have acted differently, but whether 'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Babbit v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998) (quoting *Strickland*, 466 U.S. at 687, 689); *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (per curiam) ("The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight"); *Smith v. Stewart*, 140 F.3d 1263, 1273 (9th Cir. 1998). "Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence.'" *Richter*, 131 S. Ct. at 788. "The relevant inquiry under *Strickland* is not what defense counsel could have pursued, but rather whether the choices made by defense counsel were reasonable." *Siripongs v. Calderon*, 133 F.3d 732, 736 (9th Cir. 1998); *see Anderson v. Calderon*, 232 F.3d 1053, 1096 (9th Cir. 2000) (effectiveness must be judged on the basis of counsel's "actual performance in the courtroom, as indicated by the trial transcript"). "*Strickland* does not mandate prescience, only objectively reasonable advice under prevailing professional norms." *Sophanthavong v. Palmateer*, 378 F.3d 859, 870 (9th Cir. 2004).

Whether an attorney's actions were tactical or not is a question of fact, which the federal habeas court cannot second-guess unless the state court's factual determination was objectively unreasonable. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc); *see Wood v. Allen*, 130 S. Ct. 841, 849 (2010) (assuming without deciding that whether counsel made a tactical decision was subject to review under 28 U.S.C. § 2254(d)(2)).

As to the second prong, a "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In order to prevail the petitioner must "affirmatively prove prejudice." *Id.* at 693. "The likelihood of a different result must be

9

substantial, not just conceivable." *Richter*, 131 S. Ct. at 792. Where the state court finds no

prejudice, habeas relief is warranted only if that determination was objectively unreasonable.

*Woodford v. Visciotti*, 537 U.S. 19, 26-27 (2002) (per curiam) (deferring to state court's

conclusion that defendant was not prejudiced by counsel's errors). If the federal habeas court

finds that the state court unreasonably determined that counsel was not deficient, to satisfy the

second prong of *Strickland* the petitioner must also demonstrate a reasonable probability that, but

for counsel's unprofessional errors, the result of the proceeding would have been different. *Lopez*

*v. Schriro*, 491 F.3d 1029, 1044 (9th Cir. 2007).

Further, for petitioner to succeed, "he must do more than show that he would have satisfied

*Strickland*'s test if his claim were being analyzed in the first instance, because under

§ 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment,

the state-court decision applied *Strickland* incorrectly." *Bell v. Cone*, 535 U.S. 685, 698-99

(2002). Rather, petitioner must show that the state court applied *Strickland* to the facts of his case

in an objectively unreasonable manner. *Id.* Thus, federal habeas review of a claim of ineffective

assistance is "doubly deferential." *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (per curiam);

*Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009).

**B.   Underlying Factual Background for the Claimed Error**

Petitioner contends that trial counsel was constitutionally ineffective for entering into a

stipulation proposed by the court in an effort to settle an evidentiary dispute between the parties.

The state court found that defense counsel's decision to stipulate reflected a reasoned, and indeed

very prudent, tactical decision.

The issue giving rise to the stipulation arose during pretrial motions. On October 31, 2007,

both parties filed motions in limine. The prosecution sought to introduce petitioner's admissions

made to the police following his arrest, explaining his motive for fleeing. 1CT 141-46. Petitioner

made two separate admissions regarding his motive, once to Officer Fischer, as was reflected in a

police report, and also to Detective Pierce in a recorded interview. 1CT 141-46, 147-48, 155,

164-66; 2RT 116-17. In his statements, petitioner admitted that he was currently on parole for

child molestation offense and had as a condition of parole that he was not to associate with young

10

girls. He was afraid that if he was stopped by the police he would be arrested for violating parole and sent back to prison. 1CT 141-46, 147-48, 155, 164-66; 2RT 116-17.[1]

The defense sought to exclude these admissions and any reference to petitioner's stated motive for fleeing, his prior sex offense conviction, his parole status, or his parole conditions. 1CT 125-29.

The trial court conducted a hearing on the motions on November 1, 2007. 2RT 114-32. At the hearing, the prosecution explained that petitioner's parole status and conditions, and his admissions to the police, were relevant to demonstrate his intent and motive in fleeing from the scene of the accident and in evading the officer and endangering the victim in the process. 2RT 114-15. The prosecution pointed to the applicable case law endorsing the admissibility of evidence that the defendant was on parole and feared return to prison to demonstrate motive for committing the charged offenses. 1CT 144. The prosecution proposed to prove up petitioner's parole status and conditions, as well as his admitted motive for fleeing, by introducing petitioner's statements to Detective Pierce and Officer Fischer. 2RT 115.

The defense, recognizing that such evidence was relevant and admissible, attempted to thwart its admission by offering to stipulate to petitioner's intent in order to remove intent as an issue in the case. 2RT 118 ("But intent is not an issue, and I'll take it right off the table now. I'll stipulate to Mr. Pakes' intent."). The defense then argued that petitioner's motive, along with the proffered evidence demonstrating that motive, was no longer relevant because petitioner would stipulate to his intent. 2RT 119.

The court noted that there was no dispute that the proffered evidence was relevant; the only issue was balancing its probative value against the potential for undue prejudice, confusion, and consumption of time under Evidence Code section 352. 2RT 119. The court proposed a possible middle ground that would allay the concerns of both parties, suggesting a stipulation that would sanitize the relevant facts underlying petitioner's motive, by eliminating the reference to petitioner's parole status and the parole conditions. 2RT 122. The court inquired of the parties

---

[1] In his statement to Officer Fischer, petitioner also referenced his status as a registrant under Cal. Penal Code § 290. 2RT 117.

1    whether an admission by the defense broader than petitioner's offered stipulation to intent would

2    suffice, and proposed "[s]omething like the defendant intended to evade the officer because the

3    defendant feared if detained he would be sent to prison." 2RT 122.

4          The prosecution argued that such a stipulation was insufficient because it failed to capture

5    the reality of the defendant's very real understanding of the likelihood of going back to prison

6    because of his clear violation of his parole conditions, as reflected in his own words to the

7    officers. 2RT 122-25. The defense countered that "the fact that he is on parole, he's a sex

8    registrant under 290, he's not allowed to have a young girl in his car" was highly prejudicial, and

9    he asserted it was only marginally probative. 2RT 126.

10         The after listening to the argument, the court returned to its proposed stipulation, although it

11   acknowledged that the prosecution was not required to accept the stipulation. 2RT 127. The

12   court then gave the parties an opportunity to discuss the issue during a break. 2RT 128. Upon

13   return to the bench, the court restated, in rough form, the stipulation it had proposed as follows:

14         The Court: The defendant admits that he intended to evade the officer or officers –

15         [Defense Counsel]: Officers.

16         The Court: -- who pursued him after his encounter with Sergeant – encounter is the
          wrong word. After – he observed Sergeant St. Amour at whatever location that was
17        because he reasonably believed that he would be sent to prison if apprehended.

18         I'll let [defense counsel] speak to that, then give [the prosecution] an opportunity.

19         [Defense Counsel]: I would accept that, your honor.

20   2RT 128.

21         The court again noted that the prosecution was not required to accept that stipulation, and

22   explained that the proposed statement "may have to be made as an admission in front of the jury

23   by you on behalf of your client." 2RT 128. It then asked for the prosecution's position.

24         The prosecution explained that petitioner's own admission of his motive was highly

25   probative, indeed, was necessarily the most probative evidence possible of petitioner's actual

26   motivation in committing the offenses. 2RT 129. Thus, its probative value was much higher than

27   what defense counsel had suggested. The prosecution then pointed out that the proposed

28   stipulation was insufficient because it failed to include the fact that petitioner did not only flee

12

Sergeant St. Amour because he feared returning to prison, but also admitting fleeing the scene of the initial hit and run because of his fear of returning to prison, and that was his motive for his reckless driving on the freeway before encountering Sergeant St. Amour. 2RT 129. The prosecution also wanted to introduce petitioner's statements about his motivation to explain why he kept forcing the victim to keep her head down during the chase so that she would not be seen. 2RT 129-30.

The court then exercised its influence on the prosecution by indicating its tentative position that, under Evidence Code section 352, it was not inclined to permit the prosecution's proposed mode of introducing this evidence of petitioner's motive through his statements to the officers. 2RT 130. The court explained that using an admission or stipulation would reduce the potential for undue prejudice while still allowing the probative value of the evidence to come in. The court stated:

> I guess we need a little explanation of where the court is on its legal thinking. The court is inclined to think tentatively that the evidence of motive as reflected in the police transcript as well as the police report of Officer Fischer is more prejudicial than probative under a[n] Evidence Code section 352 balancing analysis. However, I would be inclined to permit a stipulation along the lines I outlined because the evidentiary content of that stipulation is nearly as probative and it's far less prejudicial.

> What I'm really doing is offering the People an opportunity to enter into a stipulation rather than exclude the mode of evidence all together.

2RT 130.

Defense counsel then offered to address the prosecution's legitimate complaint about the timing of petitioner's motive to flee to avoid prison by modifying the court's proposed stipulation to remove the reference to encountering Sergeant St. Amour. Defense counsel offered,

I would restate it as follows:

> The defendant admitted he intended to flee because, if detained, he reasonably believed he would be sent to prison if apprehended.

> So that would include the conduct on the freeway, and I'm in agreement with the court's analysis in the sense, your Honor, that the whole reason why we want to introduce intent, it is relevant. We don't want the defendant to be getting up and saying, no, I never intended to do that or flee from the police, I was thinking about something else or what I was going to have for dinner that night.

13

> Here we are admitting intent; it just takes it out of the calculus here. The only reason why [the prosecution] wants to introduce it is not simply to show that the defendant had the intent to commit the -- 2800.2 is a specific intent crime, you have to intend to flee. We're making that admission.
>
> The other stuff that [the prosecution] wants to get in about the 290 registrant and appropriate conditions and so on is highly prejudicial and has no reasonable bearing other than inflaming the jury in that regard against Mr. Pakes.

2RT 131-32.

The court then distilled the proposed language that was currently on the table: "The defendant admits that he intended to flee following the traffic accident because he reasonably believed that he would be sent to state prison if apprehended." 2RT 132. The court asked the prosecution if it was willing to accept the stipulation. The prosecution responded that, it would accept the stipulation in light of the court's ruling that it could not present the motive evidence through petitioner's own words to the police. 2RT 132. The court indicated that was its ruling, and it confirmed the parties' acceptance of the stipulation. 2RT 132.

### C. The State Court Reasonably Rejected Petitioner's Ineffective Assistance Claim

Petitioner contends that defense counsel's performance was constitutionally deficient because he entered into the stipulation proposed by the court. Petitioner reiterates the argument rejected by the state court that defense counsel "committed a fatal error by failing to obtain a ruling on his motion in limine." Pet. Exh. E at 17. He asserts that,

> [a]s the record shows to a certainty, the court had tentatively decided to grant the motion. (2 RT 130.) Indeed, the court told the prosecutor that the motion was likely going to be granted if he did not enter the court's proposed stipulation. (2 RT 130.) At that point, it was defense counsel's duty to press for a ruling. Had he done so, the evidence would have been excluded and the prejudicial stipulation would not have been read to the jury.

Pet. Exh. E at 17.

Petitioner's claim is predicated entirely upon an incorrect reading of the record regarding the court's tentative ruling. The record reflects the trial court made clear in its ruling that it was not excluding evidence of petitioner's motive, namely that he fled from the police because he feared returning to prison based on his violating his parole condition. To the contrary, the court

14

made clear in its discussion that petitioner's motive was relevant and probative; however, the court indicated the prosecution's proposed "*mode*" of presenting that evidence was more prejudicial than probative. 2RT 130. The court explained that it was inclined to hold the potential for undue prejudice arising from the full content of petitioner's statements to the officers, in which he referenced being a convicted sex offender and Penal Code section 290 registrant, outweighed its probative value, but it indicated that the prosecution could still present a sanitized version of that motive evidence, thereby reducing the prejudice side of the balance and rendering it admissible under California Evidence Code section 352. 2RT 132.

In other words, the court indicated by its tentative ruling the motive evidence was relevant and admissible, provided it was introduced in a sanitized form. The court then gave the parties an opportunity to agree on a stipulation as to its form in order for each party to retain some control over the content and form of the evidence actually introduced. 2RT 119-32. Defense counsel recognized the obvious benefits of accepting the stipulation proffered by the court, which allowed petitioner full sanitization of the facts underlying his motive along with control over the content of the evidence offered to the jury. Indeed, the record shows that defense counsel was working cooperatively with the court in a skillful and successful effort to limit the prosecution's ability to make a counterproposal more damaging to petitioner.

Had defense counsel refused the court's proposal, the prosecution could have proffered its own sanitized method of introducing the motive evidence that excluded only the most prejudicial components of the motivation while offering more detail. For example, the court's ruling that the prosecution could not introduce petitioner's specific statements to the officers, which were wide-ranging and touched upon many potentially prejudicial topics, such as his status as a section 290 registrant, would not have precluded the prosecution from proffering a more generalized and sanitized version of his confession, such as by having the officers state without further elaboration that petitioner admitted he was on parole, that he knew he could not have a child in the car as a condition of parole, and that he feared returning to prison for violating his parole following the traffic accident. Alternatively, the prosecution could have called petitioner's parole officer to testify that petitioner was on parole at the time of the incident, and had as a condition of parole

15

that he could not have a child in his car.  Either of these alternatives presented a sanitized version of the facts explaining petitioner's motive without revealing the nature of his underlying crime or the reason for the particular probation condition, and either would have been admissible.

As pointed out by the prosecution in its moving papers, a defendant's parole status is admissible to demonstrate his motive for committing an offense.  *See People v. Johnson*, 15 Cal. App. 4th 169, 176-77 (1993), superseded on other grounds by statute as stated in *People v. Howard*, 34 Cal. 4th 1129, 1137 (2005); *People v. Scheer*, 68 Cal. App. 4th 1009, 1020 n.2 (1998); *People v. Vidaurri*, 103 Cal. App. 3d 450, 460-61 (1980); *People v. Durham*, 70 Cal. 2d 171, 189 (1969); *People v. Powell*, 40 Cal. App. 3d 107, 154-55 (1974).

The state superior court expressly rejected petitioner's erroneous interpretation of the state of the record in its ruling denying petitioner's state habeas claim.  The state court ruled:

> Petitioner claims this statement demonstrates trial counsel was ineffective because the court intended to exclude completely any reference to petitioner's convictions, parole status or parole condition.
>
> Petitioner's contention fails to acknowledge the actual words of the court as well as the context within which the court made that statement.  First, the court specifically stated that it was inclined to exclude petitioner's statements, not necessarily petitioner's parole status itself.  As emphasized above, the court referred specifically to "the evidence of motive as reflected in the police transcript [of a recording of petitioner's admissions] as well as the police report of Officer Fisher." (RT 130:18-20.)  Therefore, when the court said that it was inclined to exclude "the mode of evidence all together" it was explicitly referring to petitioner's statements to the police.
>
> Second, the court's comment must be read in light of the entire discussion between the court and counsel on the issue of the admissibility of petitioner's statements to the police that he was on parole, that he had been convicted of a sex offense and that he was prohibited by a parole condition of having a young girl in his vehicle.  The record is clear that the court's statement was made during discussions of the admissibility of petitioner's statements to the police. (RT 114:3 - 133:6.)  The broader issue of the admissibility of petitioner's prior conviction, parole status and parole condition was part of the conversation given petitioner's admissions were about his prior conviction, parole status and parole condition.  Still, the record is clear that the court and counsel were discussing specifically the admissibility of petitioner's statements on the subject and had not yet discussed the issue of the admissibility of the fact of the prior conviction, parole status and parole condition. Moreover, the discussion was about petitioner's statement in its entirety, not a redacted or sanitized version.

Resp. Exh. 12 at 3-5.

The court further noted: "The record does not explicitly reveal what the court intended to do in the absence of such an admission by petitioner. However, given counsel's arguments to the court and petitioner's offer to give an admission, it can only be concluded that the court was inclined to admit the fact of petitioner's parole status and/or parole condition or petitioner's admission of his parole status and parole condition in some form." *Id.* at 6.

The superior court also rejected trial counsel's post hoc declaration that he lacked any tactical reason for entering into the stipulation, explaining:

> This court cannot conclude Mr. Schwartz acted so improvidently. As respondent notes, Mr. Schwartz is a highly skilled defense attorney that was intimately familiar with all aspects of this case. Certainly, this court cannot ignore the fact that Mr. Schwartz testified in federal court on petitioner's behalf as a *Strickland* expert on trial tactics and defense strategy in this case.
>
> Defense counsel's offer to admit petitioner's intention to evade the police was a reasoned, and ultimately successful, trial tactic to keep out, not only petitioner's statements about his parole status and condition, but the fact of petitioner's parole status itself and his parole condition. Mr. Schwartz competently and effectively persuaded the court of his position by offering an alternative to the People's proposed evidence and succeeded in keeping petitioner's parole status from the jury.

Resp. Exh. 12 at 6-7.[2]

The state court reasonably rejected trial counsel's declaration of no tactical reasons for the stipulation as unsupported and contrary to the record. *See generally Hendricks v. Calderon*, 70 F.3d 1032, 1039 (9th Cir. 1995) ("[T]he latter-day emergence of [counsels'] belief in their own incompetence runs afoul of the rule of contemporary assessment."); *Babbit v. Calderon*, 151 F.3d 1180, 1175 (9th Cir. 1998) (finding no ineffective assistance despite "counsel's own admission that, in hindsight, he did not adequately plan or research or investigate"); *Edwards v. Lamarque*, 475 F.3d at 1126 (although trial counsel claimed he made a mistake, rather than a tactical decision, "the trial court was not obligated to 'accept a self-proclaimed assertion by trial counsel' of inadequate performance," thus federal habeas court deferred to state court's factual determination that action was tactical). As the Supreme Court has observed:

---

[2] The Sixth District Court of Appeal silently denied petitioner's renewed habeas petition raising this same claim of ineffective assistance of counsel. Resp. Exh. 16.

Although courts may not indulge "post hoc rationalization" for counsel's decisionmaking that contradicts the available evidence of counsel's actions, neither may they insist counsel confirm every aspect of the strategic basis for his or her actions. There is a "strong presumption" that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than "sheer neglect." After an adverse verdict at trial even the most experienced counsel may find it difficult to resist asking whether a different strategy might have been better, and, in the course of that reflection, to magnify their own responsibility for an unfavorable outcome. *Strickland*, however, calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind.

*Richter*, 131 S. Ct. at 790 (citations omitted).[3]

The state court's factual finding that counsel made a reasoned tactical decision to enter the stipulation is fully supported by the record and has not been rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Counsel's tactical decision "made after thorough investigation of law and facts relevant to plausible options" is unchallengeable, and cannot provide a basis for a claim of constitutional error. *Strickland v. Washington*, 466 U.S. at 690. The state court's rejection of petitioner's claim of deficient performance was not an unreasonable application of *Strickland*.

### D. The state court reasonably found no prejudice

The state court also reasonably rejected petitioner's claim of prejudice. The state court observed that, without the stipulation, petitioner's parole status and a portion of his damning admission would have come in at trial. It found that "without an admission by petitioner, the court's balancing analysis would have been different. While petitioner's statements, in whole, likely would have been excluded because of the overly prejudicial nature of his sex offender

---

[3] It should be noted that there is no dispute that petitioner's trial counsel was a highly skilled defense attorney and intimately familiar with all aspects of this case. Indeed, petitioner's trial counsel on remand from the federal court's setting aside his guilty plea was the very same attorney who had been retained by petitioner's appellate and federal habeas counsel to serve as a criminal defense expert, had been designated as a *Strickland* expert on trial tactics and defense strategy in the federal habeas proceedings, and provided expert testimony resulting in a successful challenge to the constitutional effectiveness of petitioner's previous counsel in his original guilty plea case. 1RT 10; 1CT 4. Notably, one of the topics upon which counsel opined as an expert in the federal proceedings was the admissibility of petitioner's parole status and conditions and the impact of such in trial. *See* 1CT 14. Indeed, given this background, the state court understandably concluded that trial counsel's subsequent suggestion in his declaration that he had no tactical reason for entering a sanitized stipulation regarding this motive evidence in state superior court merited no credence.

18

registration status, a sanitized version of his statements and/or the fact of petitioner's parole status likely would have been admitted given that the court and counsel all agreed that the evidence was relevant and the only concerns were under Evidence Code section 352. (See RT 122:5-9.)" Resp. Exh. 12 at 7.

Petitioner also cannot demonstrate that the state court erred in rejecting his claim of prejudice. Petitioner contends that he suffered prejudice from the stipulation because it "caused the jury to believe that petitioner either had a criminal record or had just committed a crime which was serious enough to send him back to prison. Either inference was sufficiently prejudicial to deprive petitioner of a fair trial." Pet. Exh. E at 18. The flaw in this argument is that petitioner did indeed have a criminal record and knew his actions would send him back to prison, which was precisely his motive for committing the instant offenses. The state court found that the evidence of petitioner's motive based on his parole status and his admissions to the authorities were admissible to prove motive and thus were likely to come in, even in the absence of the stipulation. Resp. Exh. 12 at 4-5, 7. Given that the amount of potentially damaging information was admissible to a greater extent that that contained in the stipulation, any refusal to enter the stipulation likely would have placed petitioner's case in an even more detrimental posture than acceptance of the stipulation.

Moreover, whether petitioner "had just committed a crime which was serious enough to send him to prison," was precisely the question the jury was called upon to consider, and they were properly instructed on the prosecution's burden of proof as to all elements of the offenses charged. This plainly cannot serve as the basis for a claim of prejudice. Accordingly the state court's finding that petitioner had failed to demonstrate prejudice was not an unreasonable application of *Strickland*.


## II. THE STATE COURT REASONABLY REJECTED PETITIONER'S CLAIM OF A *BRADY* VIOLATION

Petitioner contends the prosecution violated *Brady v. Maryland*, 373 U.S. 83 (1963) by failing to provide the defense with a copy of the San Jose Police Department Vehicle Pursuit

1 Policy in effect at the time of the crime. The state court's rejection of this claim was not an

2 unreasonably application of *Brady*.

3     **A.    Applicable Legal Standard**

4     In *Brady*, the Supreme Court held that a failure to disclose material evidence favorable to

5 the defense may constitute a violation of due process. "There are three components of a true

6 *Brady* violation: The evidence at issue must be favorable to the accused, either because it is

7 exculpatory, or because it is impeaching; that evidence must have been suppressed by the State,

8 either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S.

9 263, 281-82 (1999). "[E]vidence is 'material' under *Brady*, and the failure to disclose it justifies

10 setting aside a conviction, only where there exists a 'reasonable probability' that had the evidence

11 been disclosed the result at trial would have been different." *Wood v. Bartholomew*, 516 U.S. 1, 5

12 (per curiam) (1995), *citing Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995); *United States v. Bagley*

13 473 U.S. 667, 682 (1985) (opn. of Blackmun, J.); *id*. at 685 (White, J., concurring in part and

14 concurring in judgment); see also *Strickler v. Greene* 527 U.S. 263, 281-82 (1999).

15     Although the term "'*Brady* violation' is sometimes used to refer to any breach of the broad

16 obligation to disclose exculpatory evidence," that is to "any suppression" of so-called *Brady*

17 material, "strictly speaking, there is never a real '*Brady* violation' unless the nondisclosure was so

18 serious that there is a reasonable probability that the suppressed evidence would have produced a

19 different verdict." *Strickler v. Greene*, 527 U.S. at 281-82 (footnote omitted). A reasonable

20 "possibility" that the suppressed evidence might have produced a different result is insufficient to

21 satisfy the defendant's burden to establish a "reasonable probability of a different result." *Id*. at

22 291.

23     "[T]he materiality inquiry is not just a matter of determining whether, after discounting the

24 inculpatory evidence in light of the undisclosed evidence, the remaining evidence is sufficient to

25 support the jury's conclusions. Rather, the question is whether 'the favorable evidence could

26 reasonably be taken to put the whole case in such a different light as to undermine confidence in

27 the verdict.'" *Id*. (internal citations omitted).

28

The prosecution's duty to disclose exculpatory evidence extends to evidence possessed by a person or agency that is part of the prosecution team, has been acting on the government's behalf, or assisting the government's case. *Kyles v. Whitley*, 514 U.S. at 437.

**B.    The State Court's Rejection of Petitioner's Claim Was Not Unreasonable**

Here the state court rejected petitioner's *Brady* claim in a silent denial of his habeas petition. Resp. Exhs. 16, 18. The state court's rejection was not unreasonable because petitioner's claim failed to meet each component of a *Brady* violation; the San Jose Police Department's pursuit policy pursuit policy was readily available to the defense at trial, and it was neither impeaching nor material.

**1.    The pursuit policy was publicly available**

No *Brady* violation occurs "where a defendant knew or should have known the essential facts permitting him to take advantage of the information, or where the evidence is available . . . from another source because in such cases there is really nothing for the government to disclose." *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir.1998) (interior quotations omitted); *Raley v. Ylst*, 470 F.3d 792, 804 (9th Cir. 2006) ("where the defendant is aware of the essential facts enabling him to take advantage of any exculpatory evidence, the Government does not commit a *Brady* violation by not bringing the evidence to the attention of the defense." ); *see also United States v. Payne*, 63 F.3d 1200, 1208 (2d Cir. 1995) ("[E]vidence is not considered to have been suppressed within the meaning of the *Brady* doctrine if the defendant or his attorney '"either knew, or should have known, of the essential facts permitting him to take advantage of [that] evidence."'"); *United States v. Dupuy*, 760 F.2d 1492, 1502 n.5 (9th Cir.1985) ("Where defendants had within their knowledge the information by which they could have ascertained the supposed *Brady* material, there is no suppression by the government.").

"Documents that are part of public records are not deemed suppressed if defense counsel should know of them and fails to obtain them because of lack of diligence in his own investigation." *Payne*, 63 F.3d at 1208; *accord*, *United States v. Delgado*, 350 F.3d 520, 527 (6th Cir. 2003); *Lawrence v. Lensing*, 42 F.3d 255, 257-58 (5th Cir. 1994) ("a defendant cannot

1    prevail on a claim that evidence was suppressed if he either knew or should have known about the

2    essential facts permitting him to take advantage of any exculpatory evidence").

3         The state court reasonably rejected petitioner's claim because he made no showing or

4    allegation that the San Jose Police Department's written pursuit policy was not publicly available

5    for the asking.  In fact, petitioner acknowledged in his state court pleadings that the San Jose

6    Police Department gave him a copy upon request, and the Santa Clara County Public Defender's

7    Office already had a copy of the policy.  *See* Pet. Exh. E at 32 (citing to appellate counsel's

8    declaration filed in conjunction with state habeas petition and noting "appellate counsel was

9    easily able to obtain a copy of the vehicle pursuit policy by contacting both the police department

10   and the local Public Defender's Office").

11                  **2.     Not impeaching**

12        The state court also reasonably rejected petitioner's claim because petitioner failed to

13   demonstrate the pursuit policy was impeaching.  David Gonzalez, the off duty police officer,

14   never suggested in his testimony that his actions were pursuant to or in conformity with San Jose

15   Police Department policy on vehicle pursuits.  4RT 262-87.  Accordingly, there was no statement

16   by Officer Gonzalez regarding pursuit policies to impeach.  The written policy was therefore not

17   prima facie impeaching of Officer Gonzalez.

18        Petitioner hypothesized two possible scenarios by which the policy could have become

19   impeaching at trial.  Petitioner contended "the policy provides that an officer may pursue a driver

20   if he perceives the driving 'as being *non-hazardous*.'"  Pet. Exh. E at 29.  Petitioner suggested

21   first that, "when faced with the vehicle pursuit policy, Officer Gonzalez may have admitted that

22   he believed that petitioner was not driving in a hazardous fashion."  Pet. Exh. E at 29.

23   Petitioner's speculation was not only unsupportable in light of the record, it was too attenuated to

24   give rise to a claim of *Brady* error.  Notably, Officer Gonzalez did not opine at trial about whether

25   petitioner's driving was hazardous.  He merely recounted petitioner's actions as he observed

26   them.  4RT 262-87.  Given that Officer Gonzalez did not opine about the hazardous or non-

27   hazardous nature of petitioner's driving, there was nothing to impeach with the policy.  Had

28   petitioner wanted Officer Gonzalez's opinion about whether petitioner was driving in a hazardous

                                                      22

fashion, he could have asked. He did not. Thus, there was no basis to suggest that Officer

Gonzalez would have given one answer before being "faced with the pursuit policy" and another

after being faced with the policy. There was simply no identifiable impeachment under this

scenario. Moreover, the policy itself was not evidence of petitioner's driving, thus it could not

contradict or impeach the officer's description of what he witnessed.

Alternatively, petitioner suggests that, if Officer Gonzalez maintained that petitioner was

driving hazardously, the policy would have demonstrated a "strong bias" on the part of Officer

Gonzalez. Petitioner asserted below that "if Officer Gonzalez believed that petitioner posed a

safety hazard, Officer Gonzalez was in direct violation of the policy by mimicking petitioner's

driving." Pet. Exh. E at 29-30. Petitioner continued, "[f]rom this predicate, the jury could well

have reasoned that Officer Gonzalez was so upset and biased against petitioner due to the

preceding accident that he chose to violate the policy." *Id*. at 30. Petitioner's predicate argument

and his conclusion lacked any support.

First, the state court reasonably rejected petitioner's predicate because Officer Gonzalez

was not "mimicking petitioner's driving." Rather, the officer's testimony made clear that he took

a much more measured approach designed simply to maintain visual contact with petitioner in

order to direct other units to petitioner's location. He did not drive more than 35 miles per hour

on the shoulder, and there was no suggestion that Officer Gonzalez weaved in and out of traffic,

cutting off other cars and forcing them to brake to avoid collision, as was the case with

petitioner's driving. 4RT 267-70, 276-84.

Second, the state court impliedly found no basis for petitioner's assertion that the jury could

infer that Officer Gonzalez "chose to violate the policy." The San Jose Vehicle Pursuit Policy is

a series of "guidelines," not mandatory requirements. Resp. Exh. 6 (internal exhibit B).

Procedure L2101: "The following procedures have been established to provide guidelines for

Department members involved in vehicle pursuits."); *see also* Resp. Exh. 6 (internal exhibit B)

(Policy L2100, explaining that officers have the legal right to pursue a fleeing suspect, and noting

that each circumstance is unique and must be evaluated individually by the particular officer in

light of the circumstances). The particular section upon which petitioner relied, L2102, reiterates

23

that "[t]his policy provides specific guidelines and criteria to assist an officer in determining when the seriousness of an offense justifies the initiation, continuation, or termination of a vehicle pursuit." Resp. Exh. 6 (internal exhibit B). The pursuit policy is written in advisory, rather than mandatory, language. Resp. Exh. 6 (internal exhibit B). Petitioner provided no basis for his argument that Officer Gonzalez intended to violate the pursuit policy or that he believed he was violating its non-binding guidelines by his efforts to maintain visual contact with petitioner from a distance of approximately a quarter-mile behind. 4RT 267, 270, 281. Absent any evidence that the officer intentionally violated the policy, the state court properly found no basis for petitioner's assertion of bias.

To satisfy *Brady*'s requirements, the exculpatory value of the withheld evidence must have been apparent by the time of trial. *See California v. Trombetta*, 467 U.S. 479, 488-89 (1984) (discussing due process standard for materiality); *Arizona v. Youngblood*, 488 U.S. 51, 56 (1988). Petitioner's theory of impeachment is so speculative and so far removed from the trial testimony that it would not have been apparent to the prosecution so as to trigger any *Brady* obligation relating to impeachment.

The state court also reasonably rejected petitioner's claim because the pursuit policy would not have been admissible for the reasons offered by petitioner. Petitioner's claim was predicated on his assertion that Officer Gonzalez violated the policy in pursuing petitioner. However, the policy sets out guidelines that are subject to the individual determinations of the particular officer following the suspect under the particular circumstances of the case. Thus, proving a violation of the guidelines would have required a secondary trial within the current trial on the nature of the policies, and the advisability of following petitioner under the circumstances, presumably with experts opining on the pursuit policy as applied under the circumstances. The discussion would also have to take into account the fact that Officer Gonzalez was not directly chasing petitioner, nor engaging in any dangerous or high speed maneuvers of his own to overtake and apprehend petitioner, but rather was maintaining visual contact from a quarter mile back and directing other officers to petitioner's location. The state court impliedly concluded that petitioner's claim was highly speculative, with little likelihood the trial court would even have permitted such a time

24

consuming trial on a collateral matter within the actual trial. *See Wood v. Bartholomew*, 536 U.S. at 6 (for *Brady* purposes, information that is not admissible at trial "is not 'evidence' at all").

### 3. No materiality

For these same reasons, the state court impliedly concluded petitioner could not demonstrate that the policy was material, i.e., petitioner could not meet his burden of demonstrating a reasonable probability of a different result.

Specifically, petitioner failed to show a reasonable probability that the department policy would have even been admitted at trial. Second, petitioner failed to demonstrate that the policy, even if admitted, would have resulted in a different outcome. Petitioner's claim was that the jury would have viewed Officer Gonzalez as so biased against petitioner he would lie at trial. His premise does not withstand scrutiny. Any violation of departmental policy is impeachment on a collateral matter at best, with little bearing on the issues of petitioner's guilt.

Even assuming petitioner could have shown that Officer Gonzalez's chase did in fact violate policy, that fact only shows that he had a desire to catch petitioner, which was already evident from his actions. It does not demonstrate a bias to lie at trial regarding petitioner's actions in fleeing. It also does nothing to undermine the jury's "confidence" in his credibility because it does not impeach any of his actual testimony. Indeed, whether or not Officer Gonzalez violated departmental policy with respect to following petitioner on the freeway is so tangential to the issue at trial as to be of minimal significance.

Moreover, the claim of materiality predicated on a policy violation demonstrating bias by Officer Gonzalez is internally inconsistent and inherently self-defeating. In order for petitioner to assert that Officer Gonzalez was biased he would need to show a substantial violation of the police policy. A trivial violation of a subjective pursuit standard would hardly suggest any bias implicating his trial testimony.

To demonstrate a substantial or serious breach of the pursuit policy, petitioner would have to show that Officer Gonzalez failed to break off the pursuit even though petitioner's driving was so erratic and dangerous as to pose a serious risk to petitioner, his passengers, and to the drivers around him. But the dangerousness of petitioner's driving is precisely the point petitioner wants

25

1   to undermine with the alleged bias evidence.  In other words, the only way for petitioner to

2   achieve his goal of arguing substantial bias is to use as his starting point the very fact he

3   ultimately wants to attack indirectly through the bias evidence.  Petitioner's argument would look

4   like the following:  1)  petitioner's driving was so dangerous that only a biased officer would have

5   pursued him in violation of the pursuit policy, 2) Officer Gonzalez was biased for violating the

6   pursuit policy even though petitioner was driving recklessly and endangering others, so 3) the

7   jury should view Officer Gonzalez's testimony about petitioner's reckless driving with

8   skepticism.  The state court reasonably rejected this argument as inherently contradictory and

9   self-defeating.

10          Finally, Officer Gonzalez's testimony was fully corroborated by Adrienne's description of

11  petitioner's reckless highway driving.  4RT 234-38, 247-52.  Their interlocking accounts were

12  mutually reinforcing.  Petitioner does not suggest that any impeachment of Officer Gonzalez's

13  motives would have cast doubt on Adrienne's testimony, nor overcome the fact that, separately

14  and together they provided a clear, unrefuted picture of petitioner's dangerous driving.  The state

15  court reasonably found petitioner did not demonstrate a reasonable probability that the jury would

16  have reached a different conclusion had he introduced the policy.  The state court's rejection of

17  petitioner's claim was not an unreasonably application of *Brady*.

18

19  **III.    THE STATE COURT REASONABLY REJECTED PETITIONER'S CLAIM OF INEFFECTIVE
        ASSISTANCE FOR COUNSEL'S DECLINING TO OBTAIN THE PURSUIT POLICY**

20

21          Petitioner next contends that defense counsel was ineffective for failing to obtain a copy of

22  the San Jose Police Department pursuit policy.  Petitioner predicates his argument on the

23  assertions advanced in Argument II above.  The state court reasonably rejected this claim.

24          First, the state court impliedly rejected trial counsel's state habeas declaration asserting his

25  own inadequacy for not obtaining a copy of the pursuit policy.  *Edwards v. Lamarque*, 475 F.3d

26  at 1126.  Indeed, the record reflects that trial counsel was aware of standard police pursuit

27  policies, since the definition of "pursuit" was litigated in another context and the prosecution

28  included in his pleadings material from and citations to the California Police Officer Standards

26

and Training (POST), standard police pursuit guidelines. 1CT 112-13 (discussing California Law Enforcement Vehicle Pursuit Guidelines published by California Commission of Police Officer Standards and Training (POST), found at http://www.post.ca.gov/vehicle-pursuit.aspx). Accordingly, the state court impliedly found trial counsel was cognizant of pursuit policies and made a reasoned tactical decision that such policies were not relevant or helpful to petitioner's case.

Second, counsel's performance cannot be deemed deficient for failing to obtain a document that would not be admissible, or useable at trial, as explained in Argument II above. Indeed, no reasonably competent trial attorney would present a self-defeating claim of bias, which required the jury to first accept as true the very factual premise establishing guilt (namely petitioner's reckless driving), in order to prove up a secondary point (alleged bias by Officer Gonzalez) to indirectly attack that initial factual premise.

Third, the standard for *Brady* materiality and the standard for *Strickland* prejudice are the same, i.e., petitioner bears the burden of demonstrating a reasonable probability of a more favorable outcome. *Compare Strickland v. Washington*, 466 U.S. at 693-94, *with Strickler v. Greene*, 527 U.S. at 291. For the reasons already set out in Argument II, the pursuit policy was not material and petitioner cannot demonstrate a reasonable probability of a more favorable outcome had counsel obtained San Jose's pursuit policy. Accordingly, the state court's rejection of petitioner's claim of ineffective assistance of counsel was not an unreasonable application of *Strickland*.


IV.  **THE STATE COURT'S REJECTION OF PETITIONER'S CLAIM THE STATE KNOWINGLY PRESENTED FALSE EVIDENCE WAS NOT UNREASONABLE**

Petitioner claims that his constitutional right to a fair trial was violated because Officer Gonzalez provided perjured testimony, and the prosecution presented that testimony knowing it was false. The state court's rejection of this claim was not an unreasonable application of Supreme Court precedent.

27

**A.    Applicable Legal Standard**

The prosecution's knowing use of false evidence constitutes a violation of due process. *Napue v. Illinois*, 360 F.3d 264, 269 (1959); *see Giglio v. United States*, 405 U.S. 150, 153-54 (1972). To establish a due process violation based on the government's use of false or misleading testimony, petitioner must show that "(1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) the false testimony was material." *United States v. Zuno-Arce*, 339 F.3d 886, 889 (9th Cir. 2003). Materiality is demonstrated when there is a "reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976). Under this materiality standard, "the question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995).

Mere inconsistencies in testimony do not establish a prosecutor's knowing use of perjured testimony. *Allen v. Woodford*, 395 F.3d 979, 995 (9th Cir. 2005); *Tayborn v. Scott*, 251 F.3d 1125, 1131 (7th Cir. 2001); *United States v. Sherlock*, 962 F.2d 1349, 1364 (9th Cir. 1992); *United States v. Zuno-Arce,* 44 F.3d 1420, 1423 (9th Cir. 1995). Contradictions and changes in a witness's testimony alone do not constitute perjury, and do not create an inference, let alone prove, that the prosecutor knowingly presented false testimony. *Tapia v. Tansy*, 962 F.2d 1554, 1563 (9th Cir. 1991). Moreover, "[t]he essence of the due process violation is misconduct by the government, not merely perjury by a witness." *Morales v. Woodford*, 336 F.3d 1136, 1152 (9th Cir. 2003).

**B.    The State Court Reasonably Rejected Petitioner's Claim**

Petitioner contends that Officer Gonzalez committed perjury when he described his pursuit of petitioner. Petitioner's claim is predicated on a factual discrepancy between Officer Gonzalez's testimony regarding the chase on surface streets and the dispatch log of the pursuit. Petitioner attributes the discrepancy to willful perjury. The state court reasonably rejected that claim.

Officer Gonzalez testified that when he exited the freeway he was about 20 seconds behind petitioner's car, somewhere between 200 yards to a quarter mile behind. 4RT 270, 282. Officer Gonzalez described that petitioner got off the freeway at the Seventh Street exit (which actually exits onto Sixth Street). Petitioner then turned west on Keyes Street. 4RT 282-83. Officer Gonzalez continued following until he saw a marked police car, which he thought was around the intersection of Second or Third Street and Keyes Street, although he was not certain. 4RT 283-84. Defense counsel then had the following colloquy with the officer:

Q. You were breaking off your chase?

A. I was breaking off my following him; I wouldn't say it was a chase.

Q. Did you drive down a one-way street the wrong way?

A. I don't think so, no.

Q. You wouldn't ordinarily do that, would you?

A. No.

Q. Did you see Mr. Pakes driving the wrong way on a one-way street?

A. Uh - - not that I can remember, no.

4RT 285.[4]

Petitioner contends these last three equivocal answers constituted perjured testimony when compared with the police dispatch log, which reports Officer Gonzalez's telephone contact with the dispatcher as follows:

Supp     txt: Subj got off 7th Street, RP still following

...

Supp     txt: Now W/B Keyes from 7th

Supp     txt: W/B Keyes approc Monterey

Supp     txt: S/B 3rd going wrong direction

...

Supp     txt: W/B on Humboldt

---

[4] We note that the challenged evidence was not even presented by the prosecution. The challenged statements came out during cross-examination. 4RT 285.

1        …

2        Supp      txt:  Now N/B Monterey

3        …

4        Supp      txt:  RP sees SJPD unit

5    Resp. Exh. 6 (internal exhibit C).

6        Petitioner asserts that "[w]ithout a doubt, the transcript establishes that Officer Gonzalez

7    testified falsely." Pet. Exh. E at 34. Petitioner argues that "it is manifest that Officer Gonzalez

8    perjured himself when he denied that he drove the wrong way on a one way street or had seen

9    petitioner do so." Pet. Exh. E at 34. The state court reasonably rejected petitioner's overblown

10   assertion.

11       The state court impliedly found that Officer Gonzalez's testimony reflected nothing more

12   than a fading memory of events that occurred on December 15, 2001, nearly six years before his

13   testimony on November 7, 2007. His response to the defense questions were equivocal, and

14   reveal uncertainty of the facts, rather than perjury. The two key answers upon which petitioner's

15   perjury claim is predicated are: "I don't think so, no," in response to the question whether he

16   drove down the wrong way on a one-way street, and "Uh - - not that I can remember, no" in

17   response to the question whether he saw petitioner drive the wrong way down a one-way street.

18   The equivocal nature of these responses negated petitioner's claim of perjury.

19       Indeed, the principle that fading memories may lead to inaccurate testimony is so well

20   established, that California has incorporated the principle into its standard jury instructions.

21   CALJIC No. 2.21.1 provides:

22           Discrepancies in a witness's testimony or between a witness's testimony and
         that of other witnesses, if there were any, do not necessarily mean that [any] [a]
23       witness should be discredited. Failure of recollection is common. Innocent
         misrecollection is not uncommon.

24

25   Similarly, CALCRIM No. 226 provides:

26           Do not automatically reject testimony just because of inconsistencies or
         conflicts. Consider whether the differences are important or not. People sometimes
27       honestly forget things or make mistakes about what they remember.

28

                                                30

*See generally Dodds v. Stellar* 77 Cal. App. 2d 411, 426 (1946) ("While 'failure of recollection is a common experience and innocent misrecollection is not uncommon' might be regarded as a gratuitous observation, it is nevertheless a truism . . . ."); *see also People v. Woodard*, 23 Cal. 3d 329, 341 n.8 (1979) ("The fact that Johnson's testimony contradicted Spencer's does not inevitably mean that one of the two committed perjury, for it is widely recognized that 'innocent misrecollection is not [an] uncommon [experience]'"). The state court's conclusion that these mere inconsistencies did not demonstrate perjury was not an unreasonable application of Supreme Court precedent. *See Allen v. Woodford*, 395 F.3d at 995; *Tayborn v. Scott*, 251 F.3d at 1131.

Indeed, petitioner's claim of perjury, and his assertion that the prosecution knowingly relied on perjured testimony, is nonsensical under the circumstances because the alleged perjurious testimony actually undercut the prosecution's case and supported the defense. One of the key components of the reckless driving and felony evasion was the fact that petitioner drove the wrong way down a one-way street, as described by Adrienne and Sergeant St. Amour. 4RT 237-38, 292-96. The prosecution had no incentive to put forward knowingly false testimony that contradicted the description of Adrienne and Sergeant St. Amour on that point.

Petitioner speculates that the prosecution wanted to shield the jury from realizing that Officer Gonzalez's testimony on that point was incorrect. Pet. Exh. E at 36. However, the jury was obviously already aware of the conflict between Officer Gonzalez's account, in which he expressed a doubt that petitioner drove the wrong way down a one-way street, and that of Sergeant St. Amour and Adrienne who testified otherwise. Plainly, the jury did not discredit Officer Gonzalez's testimony due to this minor discrepancy.

Petitioner also posits that the prosecution "could not have plausibly accused petitioner of driving dangerously while his own witness acted in the same manner with a loved one in the vehicle." Pet. Exh. E at 36. The state court reasonably rejected this assertion, which fails for two reasons.

First, the factual predicate is unsupported, namely that Officer Gonzalez actually drove the wrong way down the one-way street. The dispatch log only recounts what the officer reported seeing petitioner do, not what he himself did. Officer Gonzalez need not have followed petitioner

31

down the one-way street to report on petitioner's location and direction. Officer Gonzalez, who was over 200 yards behind petitioner, would have seen petitioner turn the wrong way on Third Street well before he arrived at that intersection. Third Street has no outlet other than turning onto Humboldt Street at the next block, and by the time Officer Gonzalez reached the intersection of Third Street and Keyes, he could easily have observed petitioner turn the wrong way on Humboldt Street. Officer Gonzalez could then have continued on Keyes Street, paralleling Humboldt Street, and as he approached the next intersection he would have seen petitioner driving up the wrong way on 2nd Street from Humboldt Street. Indeed, such a course of action would have explained the fact that Officer Gonzalez incorrectly reported to dispatch that petitioner drove northbound on Monterey Boulevard (First Street) instead of Second Street as described by Sergeant St. Amour. 4RT 294. It would also explain why he recounted seeing a patrol car at the next intersection, where Sergeant St. Amour attempted to block petitioner's escape. Moreover, Sergeant St. Amour did not report any other car driving the wrong way on the one-way streets other than petitioner. 4RT 292-98, 318. Contrary to petitioner's suggestion, the dispatch log does not demonstrate that Officer Gonzalez followed petitioner the wrong way down the one-way street, and Sergeant St. Amour's testimony demonstrates he did not.

Second, even assuming Officer Gonzalez did follow petitioner down the one-way street, the prosecution still had no motive to proffer known perjured testimony that actually weakened its case. Petitioner's claim that the prosecution could not argue that petitioner's driving was reckless when Officer Gonzalez did the same was properly rejected by the state court. Petitioner was driving with an unbelted 12 year old in the front seat of an old pickup truck. The evidence showed that he forced oncoming traffic to swerve out of his way and avoid him. 4RT 238, 295-96. There is no suggestion that Officer Gonzalez, who was 20 seconds behind petitioner, caused any similar problems for any oncoming traffic. Moreover, as a police officer, Officer Gonzalez was legally authorized to pursue and apprehend petitioner, even by driving down a one-way street. Their situations are simply not comparable. The state court reasonably rejected petitioner's speculation regarding the prosecution's motives.

The state court also reasonably rejected petitioner's claim that he was prejudiced by the introduction of the challenged statement. *See United States v. Agurs*, 427 U.S. at 103. Indeed, the challenged testimony actually benefitted petitioner because Officer Gonzalez asserted that petitioner did not drive the wrong way down a one-way street. Had the prosecution taken the extra step of introducing the dispatch log, that evidence would only have provided further proof of petitioner's guilt by bolstering the other witnesses' testimony of petitioner's reckless driving. Under these circumstances, there is no reasonable possibility that the alleged false testimony could have affected the jury's verdict. The state court's rejection of petitioner's claim was not an unreasonable application of *Napue* and *Agurs*.

## V. THE STATE COURT REASONABLY REJECTED PETITIONER'S CLAIM OF CUMULATIVE ERROR

Petitioner next contends that the state court erred when it rejected his assertion in his state habeas petition that, even if none of the four claims identified above was individually sufficient to merit setting aside the judgment, when the above four claims of error were considered together— i.e., the alleged ineffective assistance for entering the stipulation, the alleged withholding of the pursuit policy, the alleged ineffective assistance for not obtaining the pursuit policy, and the alleged perjury—they combined to violate petitioner's due process rights. Pet. Exh. E at 38-39. The state court reasonably rejected this claim.

"Cumulative error applies where, although no single trial error examined in isolation is sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors has still prejudiced a defendant." *Whelchel v. Washington*, 232 F.3d 1197, 1212 (9th Cir.2000) (internal quotation marks and alterations omitted). "Under traditional due process principles, cumulative error warrants habeas relief only where the errors have 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). Such 'infection' occurs where the combined effect of the errors had a 'substantial and injurious effect or influence on the jury's verdict.' *Brecht*, 507

U.S. at 637, 113 S. Ct. 1710 (internal quotations omitted)." *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007).

First, for the reasons explained above, the state court reasonably found that there were no errors. Accordingly, there was no error to accumulate. *See United States v. Haili*, 443 F.2d 1295, 1299 (9th Cir. 1971) ("As to his 'cumulative error' theory, this court has said that 'any number of "almost errors," if not "errors," cannot constitute error.'"). Thus, the state court's rejection of petitioner's claims was not an unreasonable application of Supreme Court precedent. Second, for the reasons discussed above, the prejudice for each of the above claims was minimal, and thus, even when taken together could not have had a substantial or injurious effect on the verdict.

**VI.  THE STATE COURT'S REJECTION OF PETITIONER'S CLAIM OF PREJUDICIAL INSTRUCTIONAL ERROR WITH RESPECT TO A VIOLATION OF THE BASIC SPEED LAW AS ONE OF FIVE PREDICATE MOVING VIOLATIONS FOR PURPOSES OF VIOLATING VEHICLE CODE SECTION 2800.2, FLEEING A PURSUING PEACE OFFICER, WAS NOT UNREASONABLE**

Petitioner's sixth claim pertains to his conviction for violating California Vehicle Code section 2800.2, fleeing a pursuing peace officer. Petitioner contends that the he suffered prejudice due to the state court's alleged misallocation of the burden of proof with respect to an affirmative defense to one of the predicate traffic infractions offered in support of the crime of fleeing a pursuing peace officer. The state court reasonably rejected this claim, finding no prejudice from the alleged instructional error.

**A.  Legal Background**

California Vehicle Code section 2800.2 provides:

(a) If a person flees or attempts to elude a pursuing peace officer in violation of Section 2800.1 and the pursued vehicle is driven in a willful or wanton disregard for the safety of persons or property, the person driving the vehicle, upon conviction, shall be punished by imprisonment in the state prison, or by confinement in the county jail for not less than six months nor more than one year. The court may also impose a fine of not less than one thousand dollars ($1,000) nor more than ten thousand dollars ($10,000), or may impose both that imprisonment or confinement and fine.

(b) For purposes of this section, a willful or wanton disregard for the safety of persons or property includes, but is not limited to, driving while fleeing or attempting to elude a pursuing peace officer during which time either three or more violations

34

that are assigned a traffic violation point count under Section 12810 occur, or damage to property occurs.

Consequently, this statute provided two theories of liability applicable to petitioner. Under this section, a defendant is liable if he drives with "a willful or wanton disregard for the safety of persons or property" while fleeing from an officer *or* if he commits "three or more violations that are assigned a traffic violation point count under Section 12810 occur" while fleeing.[5] In this case, the jury was instructed on these two alternative theories pursuant to CALCRIM No. 2181. With respect to the former theory of liability, the state court rejected petitioner's legal challenges, explaining that, given petitioner's conduct of driving the wrong way up a one way street and forcing another car to swerve out of his way, "there was sufficient evidence that the jury could have found that defendant's conduct constituted a willful and wanton disregard for the safety of Adrienne and the other driver as well as the other driver's car." Resp. Exh. 9 at 19.

With regard to the second theory of liability based on three or more moving violations, "the trial court . . . specified five possible traffic violations: (1) driving the wrong way on a one-way street (§ 21657); (2) exceeding the posted speed limit (§22351, subd. (b)); (3) driving with a child under 16 who is not wearing a seatbelt (§ 27360.5, subd. (b)); (4) failing to drive in the right hand lane without leaving the roadway (§ 21650), and (5) improper turning (§ 22107, subd. (a))." Resp. Exh. 9 at 16-17. Petitioner's claim is directed at the second of the five moving violations, exceeding the posted speed limit. Petitioner asserts that the instruction given to the jury erroneously shifted the burden of proof to petitioner with respect to an affirmative defense to a violation of this traffic infraction. The state court did not resolve whether the instruction was erroneous, concluding that, even assuming it erroneously shifted the burden of proof as to the infraction, the error was harmless beyond a reasonable doubt.

The state court explained:

> Defendant also argues that the trial court erred by instructing the jury that he bore the burden of proving that his act of driving in excess of the posted speed limit was not violative of the basic speed law.

---

[5] Cal. Vehicle Code § 2800.2 also provides for a third theory of liability—if property damage occurs during the chase—which was not at issue in this case.

The trial court instructed the jury that "Vehicle Code section 22351 (b) provides that the speed of any vehicle upon a street or highway in excess of the posted speed limit is unlawful *unless the defendant establishes by competent evidence* that the speed in excess of the posted speed limit did not constitute a violation of the basic law at the time, place and under the conditions then existing. The basic speed law is that no person shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent, having due regard for weather, visibility, traffic on and the surface and width of the street or highway, and in no event may the speed may [*sic*] be dangerous to the safety of persons or property." (Italics added.)

Pursuant to section 22351, subdivision (b), it is unlawful to drive in excess of the posted speed limit "unless the defendant establishes by competent evidence" that his speed was not violative of the basic law.[6] The basic speed law provides that a person may not drive "at a speed greater than is reasonable or prudent having due regard for weather, visibility, the traffic on, and the surface and width of, the highway, and in no event at a speed which endangers the safety of persons or property." .(§ 22350.)

Defendant contends that "section 22351, subdivision (b) includes an affirmative defense to the crime of driving in excess of the posted speed limit. The affirmative defense is that the speed was reasonable within the terms of the basic speed law. If there is evidence supportive of the defense, it becomes the People's burden to disprove the defense beyond a reasonable doubt." Defendant also argues that "[t]his court should hold the People to the position" that it advocated in *People v Mentch* (2008) 45 Cal.4th 274 (*Mentch*).

In *Mentch, supra,* 45 Cal. 4th 274, the California Supreme Court asked the parties to brief the issue of whether "a defendant's burden to raise a reasonable doubt regarding the compassionate use defense (see *People v. Mower, supra,* 28 Ca1.4th at p. 477) is a burden of production under Evidence Code section 110 or a burden of persuasion under Evidence Code section 115 . . . [and] whether the trial court should instruct the jury on a defendant's burden and, if so, how." (*Mentch,* at p. 292, fn. 12.) However, the court did not reach the issue. (*Ibid.*) Justice Chin, joined by Justice Corrigan, commented on this issue in concurring opinion. "[The parties] agree that the defendant's burden is only to produce evidence under Evidence Code section 110, and that once the trial court finds the defendant has presented sufficient evidence to warrant an instruction on the defense, the defendant has fully satisfied this burden; accordingly, the court should not instruct the jury on nay defense burden." (*Mentch,* at p. 293 (cone. opn. Chin, J.).) The concurring opinion also suggested that "trial courts might well be advised to be cautious before instructing on any defense burden." (*Id.,* at p. 294.)[7]

---

[6] Section 223 51, subdivision (b) provides: "The speed of any vehicle upon a highway in excess of the prima facie speed limits in Section 22352 or established as authorized in this code is prima facie unlawful unless the defendant establishes by competent evidence that the speed in excess of said limits did not constitute a violation f the basic speed law at the time, place and under the conditions then existing."

[7] Defendant contends that the trial court was required to give the portion of CALCRIM No. 595 that states: "The People have the burden of proving beyond a reasonable doubt that the defendant's rate of travel was not reasonable given the overall conditions, even if the rate of travel was faster than the prima facie speed law.

(continued…)

The People agree that section 22351 sets out an affirmative defense.  Relying on *People v. Mower* (2002) 28 Cal.4th 457, 478-483, they argue that the "weight of this burden of proof placed upon the defendant by an affirmative defense is to raise a reasonable doubt."  Focusing on the instructions regarding the prosecution's burden of proving defendant's guilt beyond a reasonable doubt, they also argue that "there is no reasonable likelihood the jury would have understood this instruction as placing a more onerous burden on the defendant than ensuring there was evidence raising a reasonable doubt as to whether the basic speed law was satisfied, or as obviating the requirement that the prosecution bore the burden of proving [defendant's] guilt beyond a reasonable doubt as to that charge."

Assuming the instruction was erroneous, it was harmless under either the state or federal standard.[8]  The evidence that defendant was driving "at a speed greater than [was] reasonable or prudent" and "at a speed which endanger[ed] the safety of" Adrienne was overwhelming.  Defendant was driving his truck over the posted speed limit at night in a residential neighborhood with a minor, who was not wearing a seatbelt, in the front seat.  There was also an unsecured ladder in the back of the truck, which shifted as he turned the truck.[9]  Based on the evidence, any error in the instruction regarding defendant's affirmative defense was harmless beyond a reasonable doubt.

Resp. Exh. 9 at 24-27, footnotes in original.

Petitioner's claim of prejudice fails because the asserted error did not have a "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. at 637.  The *Brecht* standard applies on federal habeas review when the jury is misinstructed as to one possible alternative legal theory for imposing criminal liability.  *Hedgpeth v. Pulido*, 555 U.S. 57 (2008).  The Supreme Court explained in *Pulido* that "harmless-error analysis applies to instructional errors so long as the error at issue does not categorically vitiat[e] all the jury's

_____

(...continued)
If the People have not met this burden, you must find the defendant did not violate the prima facie speed law."

[8] Defendant contends that the error was reversible per se.  In *Mower, supra*, 28 Cal.4th at p. 484, the California Supreme Court rejected this contention, stating that an erroneous instruction regarding the burden of proof of an affirmative defense is evaluated under the standards stated in either *Chapman v. California* (1967) 386 U.S. 18, 24, or *People v. Watson* (1956) 46 Cal.2d 818, 836.

[9] Defendant points out that the ladder had not fallen out while he was driving on the freeway, and thus its presence was irrelevant.  However, the fact that the ladder had not fallen out previously or that there was not an accident while he was fleeing the police did not render his driving reasonable or prudent.  (*People v. Don Carlos* (1941) 47 Cal.App.2d Supp. 863, 965 ["[I]t is clear that mere speed constitutes a violation of [the basic speed law], and the absence of an accident, actual or near, neither in law nor logic tends to prove that an excessive rate of speed was reasonable or prudent nor that it did not of itself endanger the safety of persons and property."].)

37

findings. An instructional error arising in the context of multiple theories of guilt no more vitiates all the jury's findings than does omission or misstatement of an element of the offense when only one theory is submitted." *Id.* at 61 (citations and quotation marks omitted). *Hedgpeth* explained that when the jury receives a defective charge as to one possible legal theory for liability, such error is subject to the harmless error review under *Brecht* in light of the evidence demonstrating the factual predicate for either the erroneously instructed upon theory or the otherwise legally correct theory. *Id.* at 62; *see also Byrd v. Lewis*, 566 F.3d 855, 866 (9th Cir. 2009) (explaining that *Brecht* harmless error review applies to the alternative theory of criminal liability that was not the subject of legal error).

Here, petitioner was not prejudiced by the instruction for three different reasons. First, as to the speeding violation itself, the evidence showed, notwithstanding the erroneous instruction, that petitioner was driving in excess of the posted speed limit, and the evidence amply demonstrated that petitioner was driving at a speed greater than was reasonable or prudent under the circumstances. As the state court observed, petitioner was driving over the posted speed limit, at night, through a residential neighborhood. The truck petitioner was driving had an unsecured ladder in the back, which the officer noted was shifting dangerously with each maneuver made by petitioner. 4RT 303-04. Petitioner also had an unbelted minor in his front seat who would be seriously affected by any sudden stops or turns. 4RT 232, 269. Under the circumstances and conditions, driving over the posted speed limit was neither "reasonable" nor "prudent."

Second, the speeding violation was one of *five* qualifying infractions alleged as a predicate for the section 2800.2 violation. Section 2800.2 required the jury need find just *three* qualifying violations. The evidence with respect to the other four alleged violations was overwhelming.

The first violation for driving with an unbelted minor, Vehicle Code section 27360.5, was not seriously disputed by petitioner at trial and was thoroughly established by the evidence. 4RT 229, 232, 269, 304. Second, the facts demonstrating the other three moving violations, i.e., for driving the wrong way on a one-way street, for driving off the roadway, and for making an unsafe turn without signaling, were also amply demonstrated at trial. Although petitioner did raise

1  challenges on direct appeal to these violations, the challenges were legal not factual, and were

2  properly rejected by the state court.  Resp. Exh. 9 at 19-27.

3      As discussed above, the evidence overwhelmingly established that petitioner was driving

4  the wrong way on a one-way street while Sergeant St. Amour had his lights and siren activated

5  and was approaching the intersection to intercept and apprehend petitioner, constituting a

6  violation of California Vehicle Code § 21657.  Resp. Exh. 9 at 19; 4RT 238, 292-98.

7      The same is true for petitioner's acts of making an unsafe turn onto the curb, and doing so

8  without using his signal, in violation of California Vehicle Code § 22107.  The evidence of this

9  violation was amply established by the officer's testimony that petitioner's turn was unsafe and

10 that he did not use a signal.  4RT 239, 303-07, 327, 334-35; Resp. Exh. 9 at 23-24.

11     Petitioner's complaint in state court regarding driving off the roadway onto the curb in

12 violation of California Vehicle Code § 21650, which he renews in this petition, was strictly a

13 legal challenge, which was properly rejected by the state court, and as we explain below is

14 misplaced in federal court.  The underlying facts relating to the violation are not in dispute.  4RT

15 239, 303-07, 327, 334-35; Resp. Exh. 9 at 21-22.

16     Accordingly, the evidence establishing the other four vehicle code violations was

17 overwhelming and necessarily rendered any error in misinstructing on the affirmative defense to

18 the speeding infraction harmless under *Brecht*.

19     Finally, any misinstruction as to the speeding infraction was harmless for a third reason.

20 The evidence overwhelmingly established petitioner's guilt under the alternate theory of liability

21 for § 2800.2—exhibiting a wanton or willful disregard for the safety of persons or property

22 during the police chase—which does not require any traffic infractions.  The testimony

23 demonstrated that petitioner's driving was erratic and extremely dangerous.  Sergeant St. Amour

24 testified that he saw other cars on the street traveling in the correct direction heading toward

25 petitioner as the officer drove to intercept petitioner.  4 RT 295-96.  Adrienne testified that

26 petitioner drove directly at an oncoming car, forcing that car to swerve out of the way to avoid

27 collision.  4RT 238-39.  She also testified that she saw the police lights and heard the siren as

28 petitioner was driving the wrong way on the one-way street, including during the time when

39

petitioner forced the oncoming car to swerve. 4RT 255, 257-58. Moreover, petitioner maintained

his erratic behavior despite the fact that Adrienne was not belted in and was sliding from side to

side within the truck cab. 4RT 232, 269. Any head-on collision with an unbelted child would

likely have proven devastating. *See generally McNeil v. Yellow Cab Co.*, 85 Cal. App. 3d 116,

118-19 (1978) (noting that it was common knowledge that not providing passenger with seatbelt

would result in injuries in the event of a crash). Such actions by petitioner easily constituted a

wanton disregard for the safety of Adrienne and the other driver, as well as the other driver's

property, namely his or her car.

Given the overwhelming evidence that petitioner's speed was unsafe, that he committed at

least three moving violations notwithstanding the speeding allegation, and that his driving

exhibited wanton or willful disregard for the safety of persons or property during the pursuit, any

error in misinstructing the jury on the affirmative defense regarding violating the basic speed law

did not have a "substantial and injurious effect or influence in determining the jury's verdict."

*Brecht v. Abrahamson*, 507 U.S. at 637; *Hedgpeth v. Pulido*, 555 U.S. at 62.

## VII. PETITIONER'S CHALLENGE TO PERMITTING THE JURY TO CONSIDER CALIFORNIA VEHICLE CODE § 21650 AS A PREDICATE FOR FELONY EVADING IS NOT COGNIZABLE ON FEDERAL HABEAS REVIEW AND WAS REASONABLY REJECTED BY THE STATE COURT

Petitioner's final claim is that "[t]he trial court erred under the due process clause of the

Fifth and Fourteenth Amendments by allowing the jury to consider a violation of Vehicle Code

section 21650 as one of the qualifying Vehicle Code violations." Pet. at 11C. Petitioner's

challenge presents a question of law regarding the proper interpretation of California Vehicle

Code § 21650. The state court rejected petitioner's interpretation of the law on direct appeal.

Resp. Exh. 9 at 19-22. Petitioner's renewed claim on federal habeas is nothing more than an

assertion that this Court should find the state court of appeal misinterpreted state law. Petitioner's

claim is not cognizable on federal habeas. The Supreme Court has made clear that federal courts

are bound by the state courts interpretation of state law and may not reinterpret state law. *Estelle

v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a

40

federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

The Supreme Court observed in *Hicks v. Feiock*, 485 U.S. 624, 629-30 (1988), that federal courts are bound by a state court's interpretation as a matter of state law, even regarding elements of an offense and affirmative defenses.

> "Petitioner argues that the state appellate court erred in its determinations on the first two points of state law. The court ruled that whether the individual is able to comply with a court order is an element of the offense of contempt rather than an affirmative defense to the charge, and that § 1209.5 shifts to the alleged contemnor the burden of persuasion rather than simply the burden of production in showing inability to comply. We are not at liberty to depart from the state appellate court's resolution of these issues of state law. Although petitioner marshals a number of sources in support of the contention that the state appellate court misapplied state law on these two points, the California Supreme Court denied review of this case, and we are not free in this situation to overturn the state court's conclusions of state law.

*Id.*; *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *Ring v. Arizona*, 536 U.S. 584, 595-96, 603 (2002); *Wisconsin v. Mitchell*, 508 U.S. 476, 483 (1993) ("There is no doubt that we are bound by a state court's construction of a state statute."); *Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *Garner v. Louisiana*, 368 U.S. 157, 166 (1961) ("We of course are bound by a State's interpretation of its own statute and will not substitute our judgment for that of the State's when it becomes necessary to analyze the evidence for the purpose of determining whether that evidence supports the findings of a state court."); *Mendez v. Small*, 298 F.3d 1154, 1158 (9th Cir. 2002) ("A state court has the last word on the interpretation of state law.").

The legal basis for the instant claim is set out in Exhibit H, petitioner's Petition for Review to the California Supreme Court from his direct appeal. Petitioner's claim in his review petition, like his claim on direct appeal, raised an issue of state statutory interpretation. Specifically, petitioner argued that "section 21650 does not cover the conduct in question" and maintained that "[a]s a matter of law, the act of pulling onto the curb did not constitute a violation of section

21650." Pet. Exh. H at 43-45. The state court of appeal, however, disagreed with petitioner's

interpretation. It explained:

> Defendant also contends that the trial court erred in allowing the jury to consider a violation of section 21650 as one of the qualifying traffic violations.

> Section 21650 provides in relevant part that "[u]pon all highways, a vehicle shall be driven upon the right half of the roadway, except as follows: [¶] . . . (d) Upon a roadway restricted to one-way traffic."[10]

> Here, the prosecutor maintained that a violation of section 21650 occurred when defendant, who was in the left hand lane on a one-way street, suddenly turned left in the middle of the block, and drove his truck over the curb with the front two tires. There was a space of four or five feet between the curb and the sidewalk where defendant's truck came to a stop. The rear portion of the truck was "[s]ticking out in the roadway."

> Defendant argues that "[t]he introductory phrase of section 21650 limits its ambit to conduct performed '[u]pon all highways[,]'" and "[b]y definition, the act of driving onto a curb is not conduct committed on a 'highway.'"

> The Legislature's definitions of "highway," "roadway," and "sidewalk" refute defendant's arguments. A "highway" is defined as "a way or place of whatever nature, publicly maintained and open to the use of the public for purposes of vehicular travel. Highway includes street." (§ 360.) "A 'roadway' is that portion of a highway improved, designed, or ordinarily used for vehicular traffic." (§ 530:) "'Sidewalk' is that portion of a highway, other than the roadway, set apart by curbs, barriers, markings or other delineation for pedestrian travel." (§ 555.) Since the statutory definition of "sidewalk" includes the entire "portion of a highway . . . set apart by curbs," the area between the roadway and the paved portion of the sidewalk, where defendant drove the truck, was part of the highway.

> Relying on San Jose Municipal Code, section 13.08.020,[11] which allows a homeowner to construct or repair the curb or sidewalk in front of his or her property,

---

[10] Section 21650 states in full: "Upon all highways, a vehicle shall be driven upon the right half of the roadway, except as follows: [¶] (a) When overtaking and passing another vehicle proceeding in the same direction under the rules governing that movement. [¶] (b) When placing a vehicle in a lawful position for, and when the vehicle is lawfully, making a left turn. [¶] (c) When the right half of a roadway is closed to traffic under construction or repair. [¶] (d) Upon a roadway restricted to one-way traffic. [¶] (e) when the roadway is not sufficient width. [¶] (f) When the vehicle is necessarily traveling so slowly as to impede the normal movement of traffic, that portion of the highway adjacent to the right edge of the roadway may he utilized temporarily when in a condition permitting safe operation. [¶] (g) This section does not prohibit the operation of bicycles on any shoulder of a highway, where the operation is not otherwise prohibited by this code or local ordinance."

[11] San Jose Municipal Code, chapter 13.08, section 13.08.020 provides: "No cement or artificial stone sidewalk, driveway, curb or gutter shall be constructed until the person proposing to construct the same shall have procured form the superintendent of streets a permit which shall contain the name of the owner of the

(continued...)

defendant also asserts that curbs in San Jose "are not necessarily 'publicly maintained,'" and thus he did not violate section 21650.

As previously stated, a "highway" is "publicly maintained and open to the use of the public for purposes of vehicular travel." (§ 360.) Thus purpose of the public maintenance requirement in the statutory definition is to exclude private roads from traffic regulation. (See *Nunnemaker v. Headlee* (1956) 140 Cal.App.2d 666, 668-669.) Given this purpose, the public maintenance requirement applies to those portions of the highway on which vehicles travel, that is, the roadway or street. It does not apply to sidewalks or curbs. To construe the definition otherwise would result in the inability to enforce traffic violations that occur on sidewalks.

Noting that the purpose of section 21650 is to regulate driving, defendant also argues that he was not driving. Instead, he claims that he parked his truck on the curb. This argument is without merit. Here, defendant suddenly turned left in the middle of the block and drove over the curb with his front tires, but did not reach the sidewalk that was four to five feet from the curb. The act of traveling over the curb was sufficient to constitute driving.[12]

Defendant next argues that "if section 21650 was construed to include driving performed other than on the roadway," it would render section 21663, which proscribes driving on a sidewalk, superfluous. We disagree. First, subdivision (f) of section 21650 expressly contemplates driving other than on the roadway. (See *People v. Smylie* (1963) 217 Cal.App.2d 118.) Second, section 21650 does not proscribe the same conduct as does section 21663, because the former includes different exceptions than the latter.

Defendant further claims that his conduct fell within one of the exceptions to section 26150, that is, that a driver may move from the right side of the road to make a lawful left turn. (§ 26150, subd. (b).) This exception does not apply to the facts of this case. Here, defendant was not making a lawful left turn. He turned left in the middle of the block and drove over the curb towards the sidewalk.

Resp. Exh. 9 at 19-22, footnotes in original.

This Court is bound by the state court's interpretation of state law regarding the proper interpretation of the cited code sections and regulations. *Hicks v. Feiock*, 485 U.S. at 629-30; *Mendez v. Small*, 298 F.3d at 1158. Petitioner's claim regarding the correct interpretation of state

_____

(…continued)
premises abutting on the proposed sidewalk, driveway, curb or gutter, the width and length of said sidewalk, driveway, curb or gutter, and the name of the contractor, or in case said work is to be done by day labor, the name of the person who is to have actual charge of said work."

[12] We also reject defendant's claim that the actually violated section 22502, subdivision (a), which required that a vehicle must be parked parallel to the curb and no more than 18 inches from the curb, rather than section 21650. Section 22502, subdivision (a) is inapplicable when the driver's vehicle leaves the roadway.

43

law is therefore not cognizable.  Nor can he demonstrate that the state court misapplied Supreme Court precedent in interpreting its own law.

Petitioner's challenge to the state court's conclusion that his actions did not fall within the exception to § 26150(b) for making a lawful left turn, given that he turned left in the middle of the block and drove over the curb to do so, is likewise not cognizable to the extent it is based on a contrary interpretation of that exception.  With respect to the factual determination that the exception did not apply, petitioner has not rebutted the court's factual findings by clear and convincing evidence, 28 U.S.C. § 2254(e)(1), and the state court's ruling based on its factual determination was not "'objectively unreasonable' in light of the record."  *Miller-El v. Cockrell*, 537 U.S. 322, 348 (2003); 28 U.S.C. § 2254(d)(2).

Finally, for the reasons stated in the previous argument, any error with respect to this predicate infraction was necessarily harmless given the overwhelming evidence that petitioner committed three other qualifying moving violations and that and that his driving exhibited wanton or willful disregard for the safety of persons or property during the pursuit.  Thus, the asserted error could not have had a "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. at 637; *Hedgpeth v. Pulido*, 555 U.S. at 62.

## CONCLUSION

Accordingly, respondent respectfully requests that the petition for writ of habeas corpus be denied.

Dated:  June 11, 2012                                      Respectfully Submitted,

KAMALA D. HARRIS
Attorney General of California
PEGGY S. RUFFRA
Supervising Deputy Attorney General


/s/ Jeffrey M. Laurence

JEFFREY M. LAURENCE
Deputy Attorney General
*Attorneys for Respondent*

SF2012401302
20615575.doc